HELEN LARNED, Appellant, v. CITY OF DUBUQUE *et al.*, Appellees, and S. P. ADAMS, Administrator, Appellant; B. W. POOR, Intervenor, Appellant, and S. P. ADAMS, Administrator, Appellant, v. CITY OF DUBUQUE, Appellee.

1. **Judgment**: ASSIGNMENT: FRAUD: EVIDENCE. Where during the pendency of proceedings against the mayor and aldermen of a city individually to enforce their personal liability for the payment of a judgment against the city, because of their refusal to levy a tax for the payment of the same, the city, by its council, deposited in a bank a sum sufficient to indemnify said mayor and aldermen on account of such liability, and thereafter, with the aid of an attorney, representing an attorney formerly employed by the judgment creditor in the subject-matter of said judgment, held a secret conference with the judgment creditor, and, without informing her of said deposit in bank, and without notice to her attorney then employed in said litigation, procured an assignment of said judgment to a trustee, appointed by the city, in consideration of the payment of a sum much less than the amount due on said judgment, and then hurried said judgment creditor out of the city to avoid her meeting her attorney, *held*, that the evidence was insufficient to show that said assignment was procured by fraud on the part of the judgment debtor.

2. ———: ———: COMPROMISE: VALIDITY. At the time of said assignment the judgment creditor had failed in an effort to establish a vendor's lien for the amount of said judgment, the defendant city was virtually bankrupt and an execution thereon had been returned unsatisfied; a petition for the levy of a special tax by the city for the payment of said judgment had been refused, the action to recover the

amount of said judgment from the mayor and aldermen because of the refusal to levy said tax had failed upon the first trial, and a second trial was then pending. In addition to the amount paid the judgment creditor, the city agreed to pay certain court costs for which it was not liable, and the action then pending was dismissed. *Held*, that the settlement was supported by sufficient consideration.

3. ———: ———: EFFECT. The fact that said judgment was assigned to one as trustee instead of being cancelled of record did not, under the circumstances, evidence an intention to keep said judgment alive for the benefit of the judgment creditor.

4. ———: SETTLEMENT: ATTORNEY'S LIEN. An attorney's lien, duly perfected, is not affected by a settlement between the judgment plaintiff and the defendant to which the attorney is not a party, and to which he has not assented.

5. Attorney Fees: AGREEMENT: CONSTRUCTION. Where an attorney agreed to collect certain bonds placed in his hands for collection for twenty-five per cent. of the "amount made," *held*, that he was entitled to one-fourth of the amount collected on the bonds by suit or otherwise.

6. ———: ———: ———. Under an agreement by an attorney to make no charge for his services unless he collects the full amount of the claim placed in his hands, the right of the attorney to recover the compensation agreed upon will not be defeated by a settlement made by his client for a less amount than the full amount of the claim.

7. Attorney's Lien: ENFORCEMENT: STATUTE OF LIMITATIONS. An attorney's lien upon a judgment cannot be enforced after the right of action upon the contract for such fees between the attorney and his client has become barred by the statute of limitations.

*Appeal from Dubuque District Court.*—Hon. J. J. Ney, Judge.

Friday, October 7, 1892.

About November 3, 1863, one Sara Lee Porter was the owner and holder of certain bonds which had been issued by the city of Dubuque. At said time one H. A. Wiltse agreed with B. W. Poor, the intervenor, that they would procure said bonds to collect at twenty-five per cent. of the amount. November 4, 1863, Wiltse, for himself and intervenor, procured from Sara Lee Porter said bonds for collection, giving a

receipt therefor, which provided: "These bonds I agree to collect, advancing all necessary costs, at twenty-five per cent. of the whole amount made, provided I collect the full amount of the bonds, principal and interest. If I fail to collect the full amount I am to make no charge." This contract was by Wiltse assigned by parol, as to one-half thereoof, to the intervenor. In October, 1863, Wiltse and the intervenor brought suit against the city of Dubuque upon said bonds. March 16, 1866, judgment was rendered thereon against the city for eight thousand, three hundred and eighty-nine dollars and twenty-five cents, to draw ten per cent. interest, and for costs, and five thousand, nine hundred and forty-five dollars with six per cent. interest. A claim made for a vendor's lien upon certain property of the city was denied. In March, 1866, an appeal was taken from the judgment denying the lien, to the supreme court, and on June 13, 1866, the judgment of the lower court was affirmed. June 18, 1866, Wiltse and the intervenor notified the city that they claimed an attorney's lien for twenty-five per cent. of the whole amount of the judgment, and entered the same in the judgment docket opposite the entry of the judgment. October 29, 1866, execution having been issued and returned *nulla bona*, and a demand to levy a tax to pay the judgment having been made upon and refused by Mayor Thompson, Alderman Bush and the other aldermen, suit was begun by the intervenor for Sara Lee Porter against said mayor and aldermen, to enforce their personal liability to pay the said judgment, because of their refusal to levy a tax to pay the same. A verdict was rendered against the defendants, which was set aside by the court. An appeal was taken to the supreme court, which on June 19, 1867, affirmed. the judgment of the district court. 22 Iowa, 391.

During the pendency of the last above mentioned

suit the council of the city of Dubuque had taken from
its treasury the sum of twelve thousand dollars, and
placed it in a bank to the credit of the mayor and one
of the aldermen, for the express purpose of indemni-
fying the mayor and aldermen for their personal lia-
bility for refusing to levy the tax to pay the Porter
judgment.   November 11, 1867, while said suit was
pending for retrial, and while said twelve thousand
dollars was deposited as above stated, the defendant,
the city, by its mayor and other officers, and with the
aid of one Roberts acting for Wiltse, held a secret con-
ference with Sara Lee Porter in the city of Dubuque,
and, in the absence of the intervenor, concealed from
her the fact that the city had twelve thousand dollars
deposited in the bank to indemnify the mayor and
aldermen.   They then compromised her claim and
judgment against the city, and the suit against the
mayor and aldermen, by paying her five thou-
sand dollars, and agreeing to pay certain costs.
Mrs. Porter executed an assignment of the judg-
ment to L. D. Randall, trustee, appointed under
a city ordinance.   Mrs. Porter was hurried out
of the city to avoid meeting the intervenor.   The
assignment was not filed or recorded, and its existence
was unknown to the plaintiff and to the intervenor
until long after its execution.   December 6, 1867, said
Roberts paid to the intervenor three hundred and
twelve dollars and fifty cents, and took from him the
following receipt:

"Received of Sara Lee Porter, by the hand of
T. C. Roberts, three hundred and twelve dollars
and fifty cents, to apply on my claim for fees in the
case of said Porter against the city of Dubuque, and
same against John Thompson and others, in the
district court of Dubuque county, and in the supreme
court, without prejudice to my claim to enforce my
attorney's lien for the collection of the balance due me

under the original agreement between the said Sara Lee Porter and H. A. Wiltse and myself, and not otherwise; the intent being that the balance of my fees shall be recovered from the city of Dubuque.

"B. W. POOR."

August 22, 1870, Sara Lee Porter died intestate in South Carolina, leaving G. L. Porter as her sole heir. August 18, 1873, G. L. Porter died, leaving a will in which he bequeathed to the plaintiff all of his property. Before December, 1874, Randall, trustee, resigned, and the city accepted his resignation. September 27, 1882, administration was granted by the probate court of Aiken county, South Carolina, upon the estate of Sara Lee Porter, deceased. September 11, 1884, the judgment in favor of Sara Lee Porter, and against the city of Dubuque, was, by order of the probate court, sold, and was purchased by the plaintiff. April 15, 1885, the plaintiff brought this suit, and in her petition set out the recovery of the judgment by Sara Lee Porter, its nonpayment, and her title to the same by purchase at administrator's sale, also under the will of G. L. Porter. September 12, 1885, the intervenor, Poor, filed his petition of intervention in the case of Larned v. City of Dubuque. This petition was afterwards amended, and, in substance, it set out the fact of his employment by Sara Lee Porter, the services he had rendered, the recovery of the judgment, the filing of his attorney's lien, that no part of his claim had been paid, except three hundred and twelve dollars and fifty cents, which was paid December 6, 1867, and asking that judgment be rendered against S. P. Adams, administrator, etc., and that the amount found due him might be declared to be a lien on the money due said Porter on said judgment. December 31, 1885, after this suit was brought, and eleven years after he had resigned his trust, Randall, as trustee, executed a satisfaction of the judgment of Sara Lee Porter against the

city of Dubuque.   March 12, 1886, S. P. Adams, as
administrator of Sara Lee Porter, brought suit at law
against the city of Dubuque to recover the balance due
upon said Porter judgment, setting out the death of
Sara Lee Porter, his appointment as her administrator,
the recovery of the judgment against the city of
Dubuque, and that there was due thereon over eight
thousand dollars.   February 18, 1887, the plaintiff filed a
supplemental petition in equity, setting forth the
recovery of the judgment, her title thereto, the assign-
ment made by Sara Lee Porter to Randall, trustee,
that said assignment was procured by fraud, was
without consideration, and asking that it be set aside,
and for the recovery of the amount of said judg-
ment after crediting the five thousand dollars paid
Mrs. Porter.

January 6, 1886, defendant, the city of Dubuque,
answering the plaintiff's original petition, admitted
the recovery of the judgment by Sara Lee Porter, and
denied all other allegations in said petition; averred
that Sara Lee Porter, in her lifetime, assigned and
transferred in writing, for a valuable consideration, and
in full payment and satisfaction of said judgment, all
her interest therein, and ownership thereof, to the city
of Dubuque, and its representatives; and also averred
that the judgment was fully paid, satisfied, and dis-
charged.   The plaintiff replied, averring that the sum
paid for said judgment was paid by the city of Dubuque.
March 25, 1889, the city of Dubuque and Ran-
dall, defendants, answered the supplemental petition
of the plaintiff, denying all allegations therein con-
tained.   September 2, 1889, S. P. Adams, as adminis-
trator of the estate of Sara Lee Porter, filed an answer
and cross bill to the plaintiff's petition, setting up the
same matter as is set out in the plaintiff's supplemental
petition.   September 7, 1889, the defendant city
answered the cross bill of Adams, administrator, deny-

ing every allegation therein contained, and pleading the statute of limitations of five years, the statute of limitations of ten years, and the statute of limitations of twenty years. March 25, 1889, the defendant city answered the petition of intervention of Poor, admitting the recovery of the Porter judgment, and denying all other allegations therein; averring that on November 11, 1867, and during her lifetime, Sara Lee Porter, for a valuable consideration, and in full payment and satisfaction of her judgment, and in writing, did assign and transfer all her interest therein, and claim thereto, to the city of Dubuque and its representatives; that all claims and liens under said judgment, including the lien claimed by intervenor, were fully paid, satisfied, and discharged. April 20, 1889, the cause, so far as the issues raised by the supplemental petition in equity were concerned, was transferred to the equity calendar. January 4, 1890, the defendant city filed an amendment to its answer to intervenor's petition, setting up that the intervenor received three hundred and twelve dollars and fifty cents in full payment for all services rendered by him; that the intervenor's claim is barred; and that the plaintiff, her attorney, S. P. Adams, and the intervenor, have combined and colluded to cheat and defraud the defendant. The defendant city, answering to the petition of S. P. Adams, administrator, denies all allegations therein contained, and pleads other matters which we need not set out.

The issues in the law action were, by consent, to be determined at the same time as in the equity case, and a jury was waived. January 15, 1890, the plaintiff amended her supplemental petition, averring that the assignment and satisfaction of the Porter judgment were without consideration, and that Randall never had any right to satisfy said judgment, which allegations the defendant city denied. The court below dismissed the petition of the plaintiff, of intervenor, and

of Adams, administrator, and ordered that each party
pay his own costs.    Each of said parties excepted, and
appeal.—*Affirmed*.

*William Graham*, for Helen Larned, appellant.

*B. W. Poor, pro se,* and *C. C. Cole,* for intervenor,
appellant; *S. P. Adams, pro se,* administrator of estate
of Sara Lee Porter, appellant.

*Longueville & McCarthy*, for city of Dubuque,
appellee.

KINNE, J.—I. It is claimed by the plaintiff that
the assignment of the judgment obtained by Sara Lee
Porter against the defendant city was pro-
cured by fraud.    We think the plaintiff
has wholly failed to establish this claim.

1. JUDGMENT: as-
signment:
fraud: evi-
dence.

The substance of the testimony relating to this question
is that, when the compromise of the judgment of Sara
Lee Porter against the city was effected, which also
included the dismissal of her suit against the mayor
and aldermen, the intervenor was not consulted; that
Mrs. Porter's presence in Dubuque was purposely kept
from his knowledge; and that the fact that twelve
thousand dollars had been taken from the city treasury
and deposited in a bank for the protection of the mayor
and aldermen, who refused to levy the tax, was not
disclosed to Sarah Lee Porter.    The evidence does not
disclose what, if any, representations were made by the
officials of the city to Mrs. Porter.    These officials were
under no obligations to notify the intervenor of Mrs.
Porter's presence in the city, or of the contemplated
compromise, and especially was this so when, as it
appears, she was represented at the settlement by one
Roberts, an attorney, who represented Wiltse, the
attorney whom she originally employed in the case.
Sara Lee Porter had the right, regardless of the inter-

venor, to compromise her judgment, as well as the litigation growing out of its attempted enforcement. Her liability, if any, under her contract with Wiltse and Poor, for attorneys' fees, in no way prevented a compromise of her claims, so far as the defendant city was concerned. At one time before this, when both Sara Lee Porter and the intervenor were present, an attempt was made to compromise, but the intervenor advised his client against it. Counsel who represented her at the time the compromise was effected also drew the assignment, which she executed.

Much stress is laid upon the fact that the officers of the defendant city kept from Mrs. Porter's knowledge the fact that the city had set apart twelve thousand dollars to indemnify the mayor and aldermen for refusing to levy a tax to pay her judgment. In the exercise of good faith they were not bound to disclose this fact to her. This money was not set apart to pay her judgment. She had no right whatever to it. It may be that the council acted illegally in thus taking the money from the city treasury for the purpose of indemnifying its officers and members for refusing to perform a legal duty, if such it was, but this question we do not determine. For aught that appears, Mrs. Porter knew the facts relating to this twelve thousand dollars, but, in our view, it is immaterial whether she did or not. She was no nearer securing the money on her judgment by legal means, by reason of the fact that the city council had set this money apart for a purpose other than to pay her judgment.

II. It is contended that the settlement or compromise was not based upon any consideration. It appears that in March, 1866, Sara Lee Porter recovered a judgment for eight thousand three hundred and eighty-nine dollars and twenty-five cents and costs against the city. In the same action she sought to establish a vendor's lien

2. ——: ——: compromise: validity.

on certain real estate of the city, but failed. She appealed from the decision of the lower court, and was again defeated as to her lien. *Porter v. City of Dubuque*, 20 Iowa, 444. In June, 1866, she caused execution to issue on her judgment, and it was returned unsatisfied. In July, 1866, she petitioned the city council to levy a special tax to pay her judgment, but it failed and refused so to do. She then sued the mayor and aldermen, claiming that they were personally liable for refusing to levy the tax. Upon the trial a verdict was found in her favor, which the court set aside. From this ruling she appealed to this court, and the action of the lower court was again sustained. *Porter v. Thomson*, 22 Iowa, 391. While the case was pending in the district court for retrial, the council took the action setting apart the twelve thousand dollars for the purpose above referred to. Mrs. Porter then came to Dubuque. The city was then indebted to an amount exceeding eight hundred thousand dollars. It was virtually bankrupt. Its bonds were being sold at from fifteen to forty cents on the dollar. It may well be presumed, in the absence of testimony, that she was cognizant of the financial condition of the city, and the value of its securities. Under these circumstances it must be conceded that the inducement to Mrs. Porter to effect what, at least, appeared to be an advantageous compromise of her judgment, and the litigation connected therewith, was very great. It is said that no accord and satisfaction is pleaded by the city, or, if sufficiently pleaded, that it is not established. In our view, it is not a question, strictly speaking, of accord and satisfaction, but the settlement of pending litigation, as well as the compromise of her judgment.

But it is contended that the law is that an agreement, even if executed, to accept a less amount than that actually due, in satisfaction of a judgment, is without consideration and void. No doubt the great

weight of authority sustains this contention, though there are cases wherein the correctness of this rule is at least doubted. *Harper v. Graham*, 20 Ohio, 118; *Reid v. Hibbard*, 6 Wis. 192; Freeman on Judgments [3 Ed.], sec. 463. And it is quite certain that the tendency of courts is towards holding that such an agreement, fully executed, is valid as a discharge of the entire judgment.

The general rule, that a payment of part of a claim would not operate as a satisfaction of the whole, has been held not to apply in many cases, among which are the following: Where, in addition to part payment, there is an additional consideration, as an article of value. *Neal v. Handley*, 116 Ill. 418. Where the doing or procuring of an act is a burden or inconvenience to the defendant, and a possible benefit to the plaintiff. *Booth v. Campbell*, 15 Md. 569. Or if a part be paid before all is due. *Pinnel's case*, 5 Coke, 117; *Brooks v. White*, 2 Metc. (Mass.) 283; *Boyd v. Moats*, 75 Iowa, 151. Or if payment of part be made in a way more beneficial to the creditor than that prescribed in the contract. *Sibree v. Tripp*, 15 Mees. & W. 23. Or payment of part at a more convenient place than that provided in the contract. *Smith v. Brown*, 3 Hawks, 580. Or if the debtor render certain services by consent of the creditor in full payment of a debt. *Blinn v. Chester*, 5 Day, 359. Or assign certain property. *Eaton v. Lincoln*, 13 Mass. 424. Or if he pay costs and expenses of an action brought to recover a liquidated debt, in addition to a part of the debt. *Mitchell v. Wheaton*, 46 Conn. 315.

"This rule, which may obviously be urged in violation of good faith, is not to be extended beyond its precise import; and, whenever the technical reason for its application does not exist, the rule itself is not to be applied. Hence judges have been disposed to take out of its application all those cases where there was

any new consideration or any collateral benefit received
by the payee which might raise a technical legal con-
sideration, although it was quite apparent that such
consideration was far less than the amount of the sum
due." *Brooks v. White*, 2 Metc. (Mass.) 285. Again,
this rule "is technical, and not very well supported by
reason; courts, therefore, have departed from it on
slight distinctions." *Kellogg v. Richards*, 14 Wend.
116. It has been held in numerous cases that a "com-
promise and part payment of a judgment on a verdict,
on a verbal agreement that the same shall discharge it
in full, will operate, especially under equitable circum-
stances, as a discharge of the judgment." 2 Black
on Judgments, sec. 989; *Clay v. Hoysradt*, 8 Kan.
74; *Walrath v. Walrath*, 27 Kan. 395; *Harper v.
Graham*, 20 Ohio, 105; *Reid v. Hibbard*, 6 Wis. 175;
*Jackson v. Olmstead*, 87 Ind. 92; *Hendrick v. Thomas*,
106 Pa. St. 327. See *Ruddleedin v. Smith*, 36 Iowa,
669.

It is the settled doctrine that the rule we have
been discussing does not apply to a case of creditors
of an insolvent debtor who accept, in satisfaction of
their claims, a composition or sum less than the full
amount of their demands. *Murray v. Snow*, 37 Iowa,
410; 2 Parsons on Contracts [7 Ed.], p. 619, and note;
*Milliken v. Brown*, 1 Rawle, 391; *Paddleford v. Thacher*,
48 Vt. 574. The city of Dubuque may, in one sense
at least, be said to have been an insolvent debtor. It
was bankrupt. It could not pay its debts. A consid-
eration, in a legal sense, is said to "consist either in
some right, interest, profit or benefit accruing to one
party, or some forbearance, detriment, loss or respon-
sibility given, suffered or undertaken by the other."
3 Am. and Eng. Encyclopedia of Law, 831; Black's
Law Dictionary, title "Consideration." The facts
clearly show that the consideration for the assignment

of the judgment and compromise of the litigation was
the payment of certain costs, in addition to the five
thousand dollars paid on the judgment. The plaintiff
contends that the costs to be paid were those in the
case of *Porter v. City of Dubuque*, but we think it
clearly appears that the costs which were to be and
were paid were those in *Porter v. Thomson*. These
costs were paid by the city in pursuance of the agree-
ment of settlement. Mrs. Porter, having been defeated
in her appeal in this case in the supreme court, was
liable for a portion, at least, of the costs. We then
have a case which comes squarely within some of the
exceptions to this rule, heretofore noted, when, in
addition to paying part of the judgment, the city was
to pay, and did pay, costs for which Mrs. Porter was
liable. See *Mitchell v. Wheaton*, 46 Conn. 315. The
city was under no legal liability to pay these costs, and
their payment was a direct benefit to Mrs. Porter.
We have no doubt that the facts of this case take it
out from the operation of the rule contended for by
the plaintiff. We think the pleading is sufficient as a
plea of settlement and compromise. It might be more
full, but it is averred, in substance, that Mrs. Porter
assigned and transferred the judgment in writing, and
for a valuable consideration, and in full payment and
satisfaction of the judgment, all her interest therein
to the city and its representatives. The law favors
settlements and compromises of litigation, and upholds
them whenever it can be done without violating legal
rules and principles. The compromise ended the liti-
gation touching the personal liability of the city officers.
The result of that litigation was a matter of doubt and
dispute. The compromise, as made and carried into
effect, was supported by a good consideration. 3 Am.
and Eng. Encyclopedia of Law, 837, and notes; *Honey-
man v. Jarvis*, 79 Ill. 318; *Husband v. Epling*, 81 Ill.
172.

III. In addition to the plea heretofore mentioned, there was a plea of payment in full. In view of what we have said above, we need give it no consideration. We may say that the plea was not sustained, as the evidence did not show that the full amount of the judgment was paid.

IV. The plaintiff insists that inasmuch as Mrs. Porter did not cancel the judgment, but assigned it to Randall, trustee, the intention was to keep it alive for Mrs. Porter's benefit. The facts clearly show that it was Mrs. Porter's intention when she made the assignment to part with all her interest in and to the judgment, and it was not canceled, at the instance of the defendant city, to better enable it to compromise with other bondholders. Randall did not hold the judgment as the representative of Mrs. Porter, but of the city only. No one can, it seems to us, doubt, under the evidence in this case, that Randall could, after the compromise was affected, at any time, at the instance of the city, and while he was acting as trustee, have canceled this judgment. His cancellation of it after he had resigned his trusteeship in no wise affects the rights of any party to this litigation. Mrs. Porter having parted with all her interest in the judgment prior to her death, it is a matter of no moment to the plaintiff whether Randall's satisfaction of the judgment was legal or not. It was almost eighteen years after this judgment was assigned before this suit was instituted. There are no persuasive equities in the plaintiff's favor, and the court below properly dismissed her petition.

V. It follows from the conclusion we have reached that the district court did not err in dismissing the cross bill of S. P. Adams, administrator of Sara Lee Porter. Mrs. Porter having during her lifetime parted with all her interest in the judgment, she had no property therein which could be sold, or which her heirs

could take by descent.

VI. The defendant city pleads the settlement with Sara Lee Porter as a satisfaction in full of intervenor's claims. As the intervenor had, long prior to this settlement, perfected his right to a lien, the settlement to which he was not a party, and in no wise consenting between his client and the defendant city, could not impair or in any way affect his rights; and one making settlement and payment under such circumstances, without seeing that the attorney is paid and his lien discharged, does so at the peril of being thereafter compelled to pay the attorney whatever sum may be due him. *Patrick v. Leach*, 3 McCrary, 555; *Rooney v. Second Avenue Railway Co.*, 18 N. Y. 368; *Marshall v. Meech*, 51 N. Y. 140; *Casar v. Sargeant*, 7 Iowa, 318; *Hurst v. Sheets*, 21 Iowa, 507; *Brainard v. Elwood*, 53 Iowa, 30; *Winslow v. Central Iowa Railway Co.*, 71 Iowa, 200.

*4. ——: settlement: attorney's lien.*

VII. The city claims that, under a proper construction of the contract between Mrs. Porter and Wiltse, and in which the intervenor has a half interest, the three hundred and twelve dollars and fifty cents paid to intervenor is the full amount due him; that the contract provided for the payment to the attorneys of twenty-five per cent. of the "amount made;" and it is insisted that the "amount made" meant the difference between the actual value of the bonds and the amount received by Mrs. Porter in settlement, which was twenty-five hundred dollars, one-fourth of which is six hundred and twenty-five dollars, and one-half of that was the sum in fact paid intervenor. We cannot so read the contract. There is, to our minds, nothing in it which indicates that it should be so construed. We think the meaning of the contract was that the attorneys should have one-fourth of the amount they collected on the bonds, by suit or otherwise.

*5. ATTORNEY fees: agreement: construction.*

Again, it is said that, as the contract provided that Wiltse was to have this sum in case he collected the full amount of the bonds, principal and interest, and was to make no charge if he failed to collect the full amount, the intervenor cannot recover. We do not think this claim merits serious consideration, in view of the facts in evidence. The full performance of the contract on the part of the intervenor was prevented by Mrs. Porter, and she cannot thus rob the intervenor of the benefits of the contract which would have accrued to him in case he had been permitted to fully perform on his part. Her act in settling with the defendant city was a waiver of her right to insist on the collection of the full amount of the bonds and interest, as a prerequisite to his receiving the compensation provided in the contract. *Attix v. Pelan*, 5 Iowa, 336; *Williams v. The Bank of the United States*, 2 Pet. 96; *Shulte v. Hennessy*, 40 Iowa, 352; *Fleming v. Gilbert*, 3 Johns. 528.

VIII. As to the defense of collusion pleaded by the city, the evidence fails to establish it.

IX. The defendant city pleaded the statute of limitations to the intervenor's claim as against it. Our statute provides that the following actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards: Subdivision five of Code, section 2529, reads: "Those founded on written contracts, on judgments of any courts except those courts provided for in the next section [subdivision], and those brought for the recovery of real property, within ten years." Subdivision six reads: "Those founded on a judgment of a court of record, whether of this or of any other of the United States or of the federal courts of the United States, within twenty years." These provisions, so far as they apply to this case, are, in substance, like the

7. Attorney's lien: enforcement: statute of limitations.

Revision of 1860. It must be conceded, if this attempted enforcement of the attorney's lien is to be deemed an action so far as the statute of limitations is concerned, it is barred, unless, as is claimed by the intervenor, he has such an interest in the judgment as, in effect, subrogates him to the rights of the judgment plaintiff, to the extent of his lien; that to that extent he becomes the owner of the judgment, as against both parties thereto, with the same rights as to time and manner of enforcement as the judgment plaintiff had. It seems to us this "action," if it may properly be called such, is not "founded" on a judgment, but grows out of, and is based upon, the written contract of the parties. That contract has never ripened into a judgment; no action has yet been brought upon it.

It may be said that, technically speaking, this proceeding to enforce the attorney's lien is not an action. Conceding this to be so, it must follow that the right to the lien is based primarily upon the contract; but, to perfect that right, certain other steps must be taken as provided by statute. Now, it seems, if the right to maintain an action on the contract is barred, the right to enforce the lien must also fail; and it is said that while proceedings by an attorney to enforce his claim do not constitute an action, within the literal operation of the statute of limitations, yet it will, in general, be governed by the analogy of the statute. Jones on Liens, section 237; and see, also, *McNagney v. Frazer*, 27 N. E. Rep. (Ind.) 431. We are clear that when the statute has barred the right of the attorney to sue upon the contract and establish his right to his fees, and that question is properly raised in his proceeding to enforce his lien upon a judgment, his lien must fail. The intervenor's cause of action for his attorney's fees arose when the settlement was effected. *Adams v. Bank*, 36 N. Y. 255; *Marshall v. Meech*, 51 N. Y. 142; *Mygatt v. Wilcox*, 45 N. Y. 306. He might then have

brought his action against his client, and, under ordinary circumstances ten years from that time the action would be barred, it being founded upon a written contract. This settlement was had in November, 1867, and no action has ever been commenced by the intervenor for his fees, and the present proceeding was not commenced within ten years from the date of the settlement.

But it is contended that the lien holder is so subrogated to the right of the judgment plaintiff as that, to the extent of his lien, he may enforce it in the same time and manner as the judgment plaintiff could do; and counsel seem to claim that this doctrine has been established by this court. A brief review of the cases will, we think, show that this court has never so held. In *Hurst v. Sheets*, 21 Iowa, 506, it is said: "The lien of the attorney is upon what? The statute answers: It is 'upon money due his client in the hands of the adverse party.'" In *Cowen v. Boone*, 48 Iowa, 353, it was held that "the statute does not give the attorney a lien upon the judgment, as a judgment, * * * but he has a lien on money due his client, in the hands of the adverse party, from the time of giving the required notice." In that case the court expressly says it does not determine whether the lien holder had the right to enforce the lien in the same manner and to the same extent that the plaintiff in the judgment could. In *Winslow v. Central Iowa Railway Co.*, 71 Iowa, 197, it was held by the court that the Code did not provide for a lien on the judgment, but upon the claim against the adverse party, or the money in his hands.

In *Brainard v. Elwood*, 53 Iowa, 30, it was held that, when the notice of the lien is given as provided by law, "it appears to us that the attorney acquires an interest in the judgment, and by a proper proceeding may have a decree against the judgment debtor and judgment creditor for the enforcement of so much of

the judgment as shall enable him to collect what is due him. \* \* \* But, where a lien is given upon money due by a judgment, it appears to us that there is a resoluting right to enforce the lien through the judgment.'' SEEVERS, J., in a dissenting opinion in the same case, says: ''It is clear the lien is on the money in the hands of the adverse party, and not on the judgment.'' In *Wishard v. Biddle*, 64 Iowa, 529, the court in speaking of the lien says: ''His lien undoubtedly gave him interests in the judgments, and perhaps he might enforce it against the property on which the judgments were liens.'' It will be seen that the extent to which this court has gone is to hold that the attorney, having a lien, had such an interest in the judgment as he could by proper proceedings enforce to the extent of his claim. The lien is by statute upon money due his client in the hands of the adverse party, and after judgment it is now provided that the lien may be made effective by entering the statutory notice in the judgment docket opposite the entry of the judgment. Code, section 215.

The fact that the law has provided for an attorney's lien upon the judgment, as an additional means of securing to him his compensation, is no reason why he should not be held to avail himself of his right to enforce said liens within the period of limitations applicable to his action on his contract. In other words, the attorney's right to enforce his lien is measured, so far as time is concerned, by his right to maintain an action against his client for his fees. Counsel for the intervenor says: ''It may be conceded, if it were at all material or necessary, even that the statute would begin to run against the intervenor as soon as he might have commenced his action to recover his fee. But it appears in the evidence in this case that, by the co-operation of the defendant, both in purpose and effort, Mrs. Porter was secretly conveyed out of the state, to

avoid the serving of process by the intervenor for the recovery of his fee, and that she has continuously remained out of the state ever since." The record shows that Mrs. Porter never resided in Iowa. It also shows that she died in Aiken, South Carolina, in 1870, about fifteen years before this suit was commenced. So that, if the disability of nonresidence had existed, it was removed by her death. *Savage v. Scott*, 45 Iowa, 134.

No steps were taken to make intervenor's claim from Mrs. Porter's estate, presumably for the reason that on December 6, 1867, when Roberts paid the intervenor part of his fee, he, in a receipt then given, expressly waived any claim to collect further fees of Sara Lee Porter, and agreed to look only to the city of Dubuque for the balance of his fees. But we need not determine as to whether he was bound by this agreement whereby he released Mrs. Porter. In any event his cause of action against her was barred, more than ten years having elapsed since her death, and prior to the commencement of this action. Such being the case, his cause of action, as against the city to enforce his lien, was also barred.

The evidence shows that the intervenor was employed as one of the attorneys for Sara Lee Porter against the defendant city; that he rendered valuable services in the line of his employment; that he gave notice of his lien as required by statute then in force; that he has received only part of the compensation due him; but we hold that he cannot recover, for the reasons above stated. We are not unmindful of the fact that in 1867, the time this lien notice was served, there was no statute in force providing for making the lien effective after judgment, such as now exists, but we have treated the case as if it arose under the Code of 1873. The provisions of the Code in 1873 are certainly as favorable for the enforcement of the attorney's lien as was the earlier statute referred to. Revision of

1860, section 2708; Code of 1873, section 215.

The result we have reached being in any event decisive of the case, we need not discuss the many other questions raised. We have examined the case with care, and are satisfied with the result reached by the district court. AFFIRMED.