CHESTER W. BAILEY, Plaintiff, Appellee, v. UNION CENTRAL LIFE INSURANCE COMPANY, Defendant, Appellant, JOE UTTERBACK, Receiver, Defendant, Appellee.

No. 43593.

1196

Percival & Wilkinson and Stipp, Perry, Bannister & Starzinger, for appellant.

Howard L. Bump and Charles Bump, for appellee.

STIGER, J.—This is a suit for specific performance of a composition agreement between the plaintiff and the defendants, who are all of his creditors.

Plaintiff alleges in his petition that in the summer of 1934, he was indebted to the defendant, Union Central Life Insurance Company, in the sum of $11,250.00, which indebtedness is secured by a first mortgage on his 169 acres in Marion County, Iowa, on which indebtedness there was delinquent interest, and to the defendant, Joe Utterback, Receiver of the Knoxville Citizens National Bank and Trust Company, in the sum of $4,000.-00, which indebtedness was secured by a second mortgage on said real estate and a chattel mortgage; that during the said summer he entered into negotiations with the defendants, for the purpose of effecting a settlement of his said debts and refinancing the same by obtaining a new mortgage upon the farm from the Federal Land Bank of Omaha and pursuant to said negotiations made an application for a loan to said bank; that thereafter and in October, 1934, he entered into an oral arrangement with defendant Utterback, Receiver, and the Insurance Company, through its representative, Mr. Tucker, wherein the company agreed to accept the sum of $10,925.00 from the proceeds of the loan and upon receipt thereof to satisfy and release its mortgage, and the said Utterback, Receiver, agreed to accept the balance of the loan in satisfaction of the indebtedness to his trust and upon the receipt thereof to release his second mortgage on the land and the lien of the chattel mortgage. The plaintiff further states that pursuant to said arrangements and agreements he entered into a contract with the Federal Farm Land Association through its secretary, Carl Lane, and agreed

to purchase stock of said association, and pay fees and commissions for the loan, furnish an abstract, and that he did all necessary things to effect a loan from the Federal Land Bank of Omaha, and to procure the money to pay his creditors; that the Land Bank agreed to make a loan to the plaintiff upon said land in the sum of $12,400.00; that at the time he entered into said oral agreement with the defendants, no limitation as to time was placed upon plaintiff in procuring said loan except that it was the understanding that the loan should be completed and the money paid within a reasonable time; that on January 21, 1935, the Land Bank granted a commitment to the plaintiff for $12,-400.00 and is now ready and willing to pay the plaintiff or his creditors, the defendants, the proceeds of the loan and that he is ready and willing to execute the necessary papers to the bank to procure the funds. Plaintiff further stated that on or about December 20, 1934, the defendant Insurance Company refused to carry out its agreement and subsequently commenced an action in the District Court of Marion County to foreclose its mortgage which action is now pending; that plaintiff is ready and willing to carry out his part of the agreement and to do equity; and that he has no speedy or adequate remedy at law. The plaintiff prays that the defendants, upon the payment to them of the proceeds of the loan, be required to accept the same and to cancel and satisfy their liens against the plaintiff and that the lien on the mortgage executed in favor of the Land Bank be decreed to be a first lien, superior to the claims of the defendants in and to his said land, and for such other and further relief as may be equitable in the premises.

The defendant, Union Central Life Insurance Company, filed its answer and denied that it made an oral agreement with the plaintiff to accept $10,925.00 in satisfaction of plaintiff's indebtedness and alleges that it never agreed to release its mortgage lien upon the payment of said sum. Said defendant admits that on January 11, 1935, it commenced an action in the district court of Marion county, Iowa, to foreclose its mortgage and that the said action is now pending.

The plaintiff filed a reply to the answer to conform with the proof and stated therein:

"Par. 1. That in the letters of August 8, 1934, and August 26, 1934, the defendant, Union Central Life Insurance Com-

pany, by its duly authorized officers and agents agreed to accept the sum of $10,925.00 in full payment of its mortgage, which letters were addressed to Carl H. Lane, Secretary of the National Farm Loan Association, which letters were in compliance with the oral arrangement made between plaintiff, Joe S. Utterback, Receiver, and F. C. Tucker, Field Representative of the Insurance Company.''

''Par. 2. That if the defendant, the Union Central Life Insurance Company by said letters intended to limit the date on which its offer to accept would expire on September 20, 1934, waived such limitation by letters written to Carl Lane, Secretary of the National Farm Loan Association, and placed no further limitation thereon, and is now estopped from claiming that the acceptance on the part of the Insurance Company to take $10,925.00 was so limited.''

On January 4, 1936, a decree was entered wherein the trial court found that the plaintiff entered into a composition agreement with all of his creditors, that is the defendants, wherein the plaintiff, Bailey, agreed to and did apply for a loan to the Federal Land Bank of Omaha and the Federal Land Bank Commissioner on his real estate and from the proceeds of the loan the defendant Insurance Company agreed to accept $10,925.00 in payment of plaintiff's indebtedness and to release its mortgage and that Joe S. Utterback, Receiver of the Knoxville Citizens National Bank and Trust Company, agreed to accept the balance of the proceeds of the loan over and above the sum of $10,-925.00 less the taxes, expenses of the loan and stock in the National Farm Loan Association in full satisfaction of plaintiff's indebtedness to the trust and to release his second mortgage; that said agreement was to be carried out within a reasonable time, and as expeditiously as possible considering the volume of business then being handled by the Land Bank and the Land Bank Commissioner, that the Insurance Company by its conduct, is estopped from claiming the agreement was to be performed by December 20, 1934; that plaintiff has performed his part of the arrangement and has obtained a loan of $12,400.00 and that the bank and the Commissioner are now able and ready to complete the loan and pay the proceeds to the plaintiff or the defendants.

The court further found that after the loan was available

and before this suit was commenced the Insurance Company refused to accept the sum agreed upon and commenced its foreclosure action; that the defendant, Joe S. Utterback, Receiver, etc., has been ready and willing to carry out the agreement on his part; that the defendant Insurance Company should be required to accept the sum of $10,925.00 and release its first mortgage lien and dismiss its foreclosure suit. The decree ordered that plaintiff proceed to close his loan within sixty days from the date of his decree unless for good cause shown, and pay the proceeds to the defendants as provided in the agreement and upon such payment the defendants shall cancel and surrender plaintiff's notes and mortgages and release their respective liens upon the real estate. The decree enjoined the defendant Insurance Company from prosecuting its foreclosure suit and ordered its dismissal at the Insurance Company's cost.

The defendant Life Insurance Company appeals from the decree of the court.

The question for us to determine is whether or not there was a composition agreement between Bailey and his creditors, the defendants.

█ █ █ That an agreement between a debtor and his creditors to accept a composition amounting to less than their demands is valid and enforceable, see Murray and Mason v. Snow, 37 Iowa 411; Larned v. City of Dubuque, 86 Iowa 166, 53 N. W. 105; Elliott on Contracts, Section 2080. That such a composition may be enforced in equity, see Bache v. Schauble, (C. C.) 154 Fed. 859, page 861; Cutting v. Dana, 25 N. J. Eq. 265; Lobdell v. Nauvoo State Bank, 180 Ill. 56, 54 N. E. 157.

The facts in this case disclose that in the summer of 1933, each of the defendant creditors of Bailey suggested to him that he apply for a Federal Land Bank Loan and re-finance his indebtedness and pursuant to the suggestions he applied to the Federal Land Bank and the Federal Land Bank Commissioner for a loan in September, 1933, through Mr. Lane, Secretary of the Tri-County National Farm Loan Association, whose office was in Indianola. At this time Bailey owed the Insurance Company around $13,000 and Mr. Utterback, Receiver, about $4,500. The land was appraised on the basis of 179 acres and on December 1, 1933, a commitment of $13,000 was made to Bailey. Thereafter and in the said month of December, 1933, Mr. Utterback had various conversations with Bailey and field men of the

Insurance Company, about a settlement of Bailey's indebtedness. One of these meetings was in Mr. Utterback's office in Knoxville. Mr. Utterback testified in regard to this meeting in December as follows:

"I had various conversations with a Mr. Hartman and some conversations with Mr. Tucker and with two other gentlemen. At my office in Knoxville, these gentlemen agreed that they would accept $11,000.00 out of the proceeds of the commitment, we to accept the balance of the commitment after deducting all of the expenses of the loan including the taxes on the land or rather the insurance, commission, abstract fees and taxes. Mr. Bailey was not present at the arrangement. As to the second mortgage on the land we agreed to receive only what the proceeds were above $11,000.00. These Representatives of the Union Central agreed that they would take $11,000.00."

This arrangement must have been communicated to the Union Central Insurance Company for on March 21, 1934, Mr. Lane, Representative of the Federal Farm Loan Bank, wrote the company at Minneapolis as follows:

"This will acknowledge receipt of your letter under date of March 16, 1934, addressed to Mr. Lane. We also wish to acknowledge receipt of abstract of title in connection with this loan.

"You state in your letter that you will accept $11,500 in full settlement of your claim, if paid on or before April 15, 1934. I wish to advise you that Mr. Bailey has not as yet accepted our approvals. I have written him asking that he advise us of his wishes at once. I think you are quite conservative in your time limit for the payment of this loan. You, of course, appreciate the volume of business being handled by the Federal Land Bank of Omaha, and I doubt very seriously if this loan can be paid by the 16th of next month. I am assuming, however, that you will extend this time if not closed by that date, thus enabling Mr. Bailey to proceed and close his loan. Am I correct in this?"

It will be observed that the Company stipulated that the money must be paid on or before April 15, 1934.

The commitment was accepted March 27, 1934.

On June 2, 1934, a re-appraisement of the security was

made by the Land Bank and a new commitment of $12,700 in lieu of the original $13,000 commitment was made June 29, 1934, and accepted August 13, 1934. With regard to the commitment of $12,700 Mr. Utterback testified:

"After this commitment ($13,000) was later reduced I talked with Mr. Charles E. Tucker, we discussed the matter of the reduction in the commitment and as to the manner of prorating that reduction and Mr. Tucker agreed that he would recommend to the Company that they take $10,925. I was to get the rest of it. Mr. Bailey was not present. I afterwards advised him that I would accept a lesser amount. I knew it took a considerable length of time to get applications through the Federal Land Bank. There was nothing said there that I would not accept that amount that I agreed upon unless I received it by a certain date. I have been granted authority to make the settlement by the Comptroller of the Currency."

Mr. Tucker, field man for the Insurance Company, testified as follows in regard to the commitment of June 29th:

"I had a conversation with Mr. Utterback and Mr. Bailey in Mr. Utterback's office some time in the summer of 1934. At that time I told Utterback and Bailey that I would recommend to the Union Central to accept $10,925. I don't remember the exact date but I would say that conversation and my recommendation was made prior to *August 8, 1934.* I wrote the Company and told them I would recommend they accept $10,925 as full settlement of their claim. I kept a carbon copy of the letter that I wrote."

Mr. Tucker stated that his recommendation to accept $10,-925.00 was made prior to August 8, 1934.

On August 8, 1934, the Company wrote Mr. Lane the following letter:

"The Company have finally agreed to accept the largest amount available, but not less than $10,925 in full settlement of their claim in above loan, provided remittance is received here on or before September 20, 1934.

"We have done everything possible to cooperate and assist this borrower in closing his loan and sincerely trust that a special effort will be made to get the new loan closed before that date if at all possible.

"We note from our file that the abstract of title was forwarded to you under date of March 17, for examination in connection with refinancing this case.

"We shall greatly appreciate your advising us by return mail whether or not this loan can be closed on the above basis, and if so, how soon funds will be disbursed."

This letter was manifestly written after receiving Mr. Tucker's recommendation and establishes the fact that the Company adopted and approved the composition agreement made by its representatives with Mr. Bailey and Mr. Utterback.

In this letter the Company required Bailey to make payment on or before September 20, 1934, being the second date fixed by the company for payment.

On October 11, 1934, and after September 20, the second date for payment fixed by the company, it wrote Mr. Lane the following letter:

"We presume that the applicant in the above case has now returned the bond agreements and that the loan is progressing nicely.

"Will you advise us how soon we may expect the loan to be closed?"

Because it was discovered that Mr. Bailey's farm consisted of only 169 acres rather than 179 acres, a new application was required by the Land Bank.

On October 29, 1934, and over a month past the time fixed by the Company for payment, it wrote Mr. Lane as follows:

"Will you kindly advise us as to the present status of the Federal Land Bank loan application of the above named. Has the new application been filed?

"We will greatly appreciate any information you can give us at this time."

On October 31, 1934, the Company wrote Mr. Bailey the following letter in which a new date was fixed for payment by Bailey from the proceeds of the loan which the Company knew was to be obtained from the Land Bank under Bailey's application:

"Unless this loan can be paid in full by December 20th, 1934, it will be necessary that payment be made on the basis of

the full amount of the Company's claim. Therefore, we trust that you will give this matter your early attention and push the closing of the Federal Land Bank Loan prior to that date.

"You will understand that this loan is seriously delinquent and that we do not wish to carry the delinquency into the new year. If that becomes necessary, we cannot afford to make any concession whatever."

On November 5, 1934, the Insurance Company, still willing to perform its part of the agreement, wrote Mr. Lane inquiring about a tornado policy in connection with Bailey's application to the Land Bank.

On November 21, 1934, Mr. Tucker wrote his Company the following letter:

"I have your letter regarding above mentioned case, advising you have received a letter from Carl Lane, Secretary, of Indianola, Iowa; that above borrower had made a new F. L. B. application, that no commitment had been received, although Mr. Lane felt the same commitment would be granted and would let us know in due course of time.

"Last spring the company agreed to accept $11,500 as full settlement, if paid by April 15, 1934. Later I made recommendation we accept $11,000 as a full settlement, on account borrower was eligible to take advantage of Frazier-Lemke bill. Company agreed to accept this amount if paid by August 15th. Later I made another recommendation that the amount be reduced to $10,925, on account of the Frazier-Lemke bill. This the company also approved, provided they receive payment by September 20th. Above dates of settlement have past, the borrower no longer is depending upon this farm for his living, but is selling coal in different states, and in my opinion is not eligible under the Frazier-Lemke law.

"I do not see where we are bound to give this borrower further consideration, we have no loss in this loan, neither principal nor interest.

"The farm is very choice, location and buildings excellent, and I believe would find ready sale for full amount of our claim plus delinquent taxes.

"I cannot recommend we let this man cheat us out of over $2,000, when we have ample security. I recommend we reject all past offers of settlement, foreclose this mortgage at once, then

if borrower wishes to do what is right, he will pay the amount in full. In event he is unable to pay our claim in full, we will at least be started on our way towards getting title, and can then sell it to some one who will pay what we might have in the farm.

"Last week when Mr. Cravens was here in Winterset, I took this case up with him, advising I felt we had done wrong in letting this borrower chisel us, that I did not feel he was eligible now to take advantage of the Frazier-Lemke law, and that we should refuse the F. L. B. commitment, unless the full amount was paid.

"I wish you please reconsider this case, and let me hear from you again."

This letter was written a month prior to December 20th, the last date fixed by the Company for performance by Bailey. Mr. Tucker believing that the value of the farm had increased, and that it would bring the full amount due the company and being of the opinion that Mr. Bailey is not eligible to take the Bankruptcy act, recommends in this letter that the Company reject all offers of settlement and foreclose the mortgage. With reference to this letter, Mr. Tucker testified:

"On the 21st of November I recommended that the offer to take $10,925 be withdrawn. One of my reasons was that I thought he could not take advantage of the Frazier-Lemke law. The fact that the price of the land had increased had some effect upon my recommendation. I thought that we should get more money."

Thereupon the Insurance Company on December 17, and prior to December 20, wrote Mr. Lane as follows:

"You wrote us on November 21, that a new approval would be available within a short time, in the above case. We would greatly appreciate your advising us whether any figure has been given to date. We enclose stamped addressed envelope for your reply by return mail.

"Our company's claim as of January 10, 1935, is $13,188.-98. We have specified two compromise figures, and it is necessary that we have full payment at this time, if same is to be refinanced.

"If approval is not satisfactory, will you kindly see that the

abstract of title is returned here, or sent direct to our attorneys, Messrs. Percival and Wilkinson, Winterset, Iowa.''

The above letter was written after receiving Mr. Tucker's letter of November 16th and the Company, following his advice, demanded the immediate payment of the full amount due on its loan, rejecting all offers of settlement. Up to this time the Company obviously believed it to be for its best interest to accept $10,925.00 in payment of Bailey's indebtedness.

On January 11, 1935, the plaintiff began its foreclosure suit and on or about January 31, 1935, a commitment of $12,400 was available and has not been withdrawn or canceled by the Land Bank.

The trial court was right in finding a composition agreement between the parties. When Bailey was urged to apply for a loan, and did apply for and secured approval of his loan, all the parties contemplated a composition of Bailey's indebtedness.

The first composition agreed upon by the agents of the Company, Utterback, Receiver, and Bailey wherein the Company was to receive $11,000, was not approved by the Company which demanded $11,500.00. Negotiations continued and after the commitment was reduced the terms were finally agreed upon and the composition became an accomplished fact when the Company approved the composition entered into by its agent, Tucker, Bailey and Utterback, Receiver, at Mr. Utterback's office in the summer of 1934.

On August 8, the Insurance Company wrote Mr. Lane that, ''The Company has finally agreed to accept the largest amount available but not less than $10,925 in full settlement of their claim in above loan'' etc.

We conclude the parties entered into the composition agreement found by the trial court.

Appellants claim there was no composition agreement and that its arrangement for a settlement with Bailey was independent of any agreement for a settlement that may have been entered into between Bailey and Mr. Utterback, Receiver; that its offers to settle with Bailey for $11,000 if paid by April 15, 1934, and its later offers to settle for $10,925, if paid by September 20, 1934, or by December 20, 1934, constituted separate contracts with Bailey only and that it was imperative that Bailey comply with the stipulation for payments on said dates; that

because of Bailey's failure to comply with these conditions for payment on the several dates fixed by Insurance Company in its several letters, the Company, after such defaults, was no longer bound by any of these contracts or offers. .

The evidence does not support appellant in this contention.

There was not a series of contracts between Bailey and the Company wherein time was the essence of each contract and the dates fixed in the several letters did not fix a time for performance of the composition agreement. The consent of the Company to accept $11,500 and its later consent to accept $10,925 was based on and pursuant to the negotiations for a composition between Bailey, Utterback and the agents, and the agreement ultimately reached by all the parties. The Company was interested in many loans pending with the Land Bank and the Commissioner and knew they must take their slow course and the futility of fixing a certain date for performance. The Company was not demanding performance by Bailey and Lane on the several dates, but unmindful of the passing of the dates, April 15, and September 20, Mr. Tucker would see Mr. Lane each week about the loans and we find the Company urging Lane and Bailey to hurry along the closing of the loan as late as November 5th. The only purpose served by these dates was to spur Bailey and Lane to diligent efforts to secure a closing of the loan. It considered the acceptance of the proceeds to be for its interest until receiving Mr. Tucker's letter of November 21. We are satisfied that the Insurance Company, from the time it urged Bailey to obtain a new loan, intended to accept the proceeds when received by Bailey in due course.

No date having been fixed for performance, Bailey was entitled to a reasonable time.

The defendant Insurance Company further contends that if the arrangement between the parties was a composition agreement the plaintiff did not perform his part of the agreement within a reasonable time and therefore is entitled to no relief. In this case both creditors knew that their indebtedness would be paid from a loan to be secured by Bailey from the Land Bank and that the closing of the loan would take an indefinite period of time. As stated by Mr. Utterback, ''I knew it took a considerable length of time to get applications through the Federal Land Bank.''

Mr. McCumsey testified:

"This loan, from the time the original application was received at the bank, has been handled as expeditiously as possible in view of the other business of the bank."

Mr. Tucker in referring to Mr. Bailey, stated:

"I knew he had made an application and submitted an abstract and was doing everything required of him to get this loan through."

Mr. Lane testified, "In 1933 and 1934 there was a great volume of loans being made and all of the commitments and appraisements were slow."

Both Lane and Bailey made every reasonable effort to close the loan and comply with the agreement. Some delay was caused by the heavy snow storm of November, 1934, the re-appraisement, and the taking of the new application occasioned by the error in the description and number of acres. The Insurance Company did not consider December 20, 1935, an unreasonable time for payment and the money was available to pay Bailey's indebtedness a month later.

Mr. Utterback, Receiver, has recognized the composition agreement from the beginning and has been ready and willing at all times to accept the amount due him under this agreement.

The appellant claims the decree does not do equity in that the trial court did not allow interest on the $10,925.00. There is no merit in this contention. It agreed to accept $10,925.00 when obtained by Bailey from his loan. The contract did not provide for nor contemplate interest on the sum that the Company agreed to take in satisfaction of Bailey's indebtedness.

The judgment and decree appealed from must be and is affirmed.—Affirmed.

DONEGAN, C. J., and ANDERSON, MITCHELL, KINTZINGER, HAMILTON, and PARSONS, JJ., concur.