# UNION CENTRAL LIFE INSURANCE COMPANY v. ELNA SCHULTZ AND ANOTHER.[1]

February 5, 1937.

No. 31,043.

[1]Reported in 271 N. W. 249.

132

*J. L. Krusemark,* for appellant.
*C. A. Johnson* and *Schmitt, Gallagher & Farrish,* for respondents.

DEVANEY, CHIEF JUSTICE.

Action brought by the Union Central Life Insurance Company, appellant, against Elna Schultz and W. C. Schultz, her husband, to cancel a contract for deed.

On or about March 1, 1933, appellant sold to respondents certain real estate situated in Blue Earth county, Minnesota, under a contract for deed, for the sum of $12,300. Contract provided for a down payment and for yearly payments, the final payment to be made on March 1, 1945.

During the fall of 1933, one Thompson, field representative for appellant, who was in charge of the district in which the Schultz farm was situated, called upon respondents, suggesting that they make application for a federal loan. Following this visit, respondents went to the office of the Federal Farm Loan Association but were advised that no large loans were available.

Respondents advised Thompson of this and were urged by him to keep on trying to obtain a loan.

In November, 1933, respondents made application for a loan, and the Federal Land Bank issued a commitment on the application in the sum of $11,100, with the provision that they pay all their debts.

On March 9, 1934, after recommendation from Thompson, appellant's manager wrote to the secretary-treasurer of the farm loan agency stating that appellant would accept $10,650 in full payment of its claim against respondents provided payment were made on or before April 10, 1934. Thereafter negotiations were continued for the completion of the loan, and on April 30, 1934, appellant sent to the secretary-treasurer its agreement to accept said sum in full settlement and to accept payment in bonds. The agreement by its terms was to expire July 23, 1934.

On June 22, 1934, appellant was advised that the loan was about to be closed and that a certified copy of deed was required.

On July 12, 1934, appellant forwarded a certified copy of deed, stating:

"As stated in our letter of April 30, we will accept $10,650.00 as of May 20, 1934, plus interest at the rate of $1.49 per day thereafter until remittance is received at this office, in full settlement of our claim in above loan."

There were no further negotiations before the date of the expiration of the compromise agreement. There were, however, numerous negotiations carried on thereafter which will later be referred to in detail. In March, 1935, respondents were notified by appellant that no compromise would be accepted. Thereafter, because respondents were delinquent in their payments, appellant instituted proceedings for cancellation of the original contract for deed, pursuant to L. 1935, c. 240, 3 Mason Minn. St. 1936 Supp. §§ 9576-2, 9576-4.

Respondents in their answer set up the compromise agreement and sought judgment for specific performance of said agreement.

Shortly thereafter respondents instituted an action for specific performance of the modified agreement and an action asking that appellant be enjoined from prosecuting the cancellation proceedings. The cases were consolidated for trial and were tried before the court without a jury. The court found for respondents and granted specific performance, ordering appellant to deliver to the respondents a deed to the premises upon payment of $10,650 with interest computed according to the terms of the modified contract. The appeal is taken from the judgment entered.

Four questions are presented:

(1) Was the agreement entered into between the parties modifying the original contract supported by good and sufficient consideration?

(2) Was it in effect at the time the respondents were ready, willing, and able to perform thereunder?

(3) Were respondents under a duty to make tender to the appellant under the agreement?

(4) Did the court err in consolidating the actions and in granting specific performance in these proceedings?

■ It is the contention of the appellant that its agreement to accept a sum in bonds, which sum was somewhat less than the full amount of the original obligation, in full settlement of the payments under the original contract is void because not supported by consideration. There is no merit to this contention.

Under the old contract the payments were not to be completed until 1945, and the largest payment, amounting to almost $9,500, was not to be made until March 1 of that year. Under the modified agreement appellant was to receive complete payment much before the date required in the original contract, the date specified in the later agreement being July 23, 1934. Obviously the fulfillment of the modified agreement was to result in a definite benefit to appellant.

It is equally clear that the agreement demanded of the respondents a corresponding legal detriment. In order to meet the terms of the agreement and to obtain the required bonds, they were compelled to go to much trouble and to expend considerable time, effort, and money. They were also required to and did scale down other debts in order to obtain the loan in question. In order to do this it was necessary for them to reduce living expenses and personal requirements to a minimum and to sell their property, particularly livestock and produce, at inopportune times in disadvantageous markets. All this was at the constant behest and urging of the appellant's field representative, Mr. Thompson.

In light of these facts, we have no difficulty in concluding that the agreement on the part of the appellant to accept the bonds was amply supported by consideration. Compare Bailey v. Union Cent. L. Ins. Co. 221 Iowa, 1195, 268 N. W. 173; Jackson v. North Carolina J. S. L. Bank, 208 N. C. 705, 182 S. E. 110.

■ Appellant urges that the agreement to accept the compromised sum in bonds expired by its own terms on July 23, 1934, and that, granting the obligation of such agreement, since respondents were not in a position to make settlement thereunder until March 8, 1935, they cannot successfully maintain this suit. We do not agree.

The record shows that negotiations were carried on thereafter between the parties without recognition of the fact that the date stated in the agreement had expired.

On August 24, 1934, the Minneapolis office of appellant wrote to the loan association asking for the return of the certified copy of the deed hereinbefore referred to, which had been sent on March 22 and which had not been properly dated, and inquired at the same time concerning progress that was being made toward the closing of a loan.

Because the wrong certified copy of deed was forwarded, appellant again wrote to the loan association on August 28 and was advised by letter that the copy in question was in the possession of the Federal Land Bank in St. Paul and that the loan association was hoping to receive remittance on the loan so that it could be closed.

On September 28, 1934, appellant's Minneapolis office again wrote to the secretary-treasurer of the association inquiring about the loan and urging that it be brought to an early close.

Thereafter, for some reason which was not made clear, the commitment originally made on this loan was withdrawn and appellant was duly notified of this fact. On October 17, 1934, the appellant's Minneapolis office wrote to the loan association expressing the hope that it would be possible to obtain another allowance.

The appellant's field representative, Mr. Thompson, then called upon the respondents and urged them to make another attempt, and negotiations were again started. During all of these negotiations Mr. Thompson called at the Schultz farm many times and continually urged them to take all necessary steps to obtain the loan. At his insistence respondents made some 40 or 50 trips to various points throughout the state in regard to the completion of the loan. Meanwhile the appellant's office corresponded frequently with the loan association, making repeated inquiries concerning the progress that was being made, but at no time suggested that appellant would not accept the compromised amount.

On February 9, 1935, the Minneapolis office wrote to respondents, stating:

"This loan surely must have been completed by this time; and we hope that you will remit these funds at once. We have no objection to your making further effort to get a Federal loan; however, we must insist that you continue with payments on the present contract until the Federal loan is completed. Any payments to us at this time, will, of course, reduce the amount necessary to retire our claim when the Federal Land Bank loan is available to you. We will expect your remittance on or before March 1st."

The loan was reinstated sometime in February, 1935, and a new commitment was received by the respondents on March 8. After receiving notice of this commitment at 2:00 p. m. of the same day, March 8, Mr. and Mrs. Schultz went to Mankato to locate Mr. Thompson. Discovering that he was in Minneapolis, Mrs. Schultz called and talked to Mr. Thompson and to one Cravens, who were both in appellant's Minneapolis office. She informed them of receiving the notice and asked that papers be prepared so that the matter could be closed in a hurry. She was then informed for the first time by Mr. Cravens that the company could not accept the compromised settlement.

In light of the foregoing, it cannot be seriously urged that it was not the intention of all parties to keep alive and in full force and effect the agreement to accept bonds. The conduct of the appellant throughout the negotiations and up until March 8, 1935, permits of no other conclusion than that it desired the respondents to make all possible efforts to obtain the loan and to deliver the bonds in full settlement of the original contract. Respondents having done all expected of them and having fulfilled their part of the bargain, appellant cannot now be heard refusing to accept that which was procured at its own insistence.

Some point has been made of a payment in the sum of $250 by the respondents to the appellant's agent, Mr. Thompson. It is the claim of appellant that this payment was made on March 11, 1935, after the day on which the respondents talked to Mr. Cravens, and that it was intended to apply on the original contract.

On the other hand, it is the contention of respondents that the payment was made on or about March 1, and the court found that the payment was made on that date.

The testimony was in direct conflict on this point. It is unnecessary to set it out in detail. Suffice to say that there is ample testimony presented by each side to support a finding for either the appellant or respondents. The trial court having chosen to believe that presented by respondents, we can do naught but affirm its finding.

As to the purpose of this payment, the overwhelming weight of the evidence indicates that it was paid to apply on the original contract with the understanding that it would reduce the amount necessary to discharge appellant's claim under the agreement as modified. Both Mr. and Mrs. Schultz testified to this effect, and the prior correspondence, particularly the letter of February 9 from Mr. Cravens to the Schultzes, hereinbefore quoted, substantiates their testimony. We cannot disturb the court's finding on this point.

■ Appellant's contention that it was necessary for the respondents to make tender under the modified agreement is not sound. When respondents notified appellant of the notice of commitment, the company refused to accept the amount agreed to and informed them that all compromises were called off. Several offers of payment were made without success. Under the circumstances, tender would have been a useless gesture, and in such case it is not required. 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1934) § 9612; Johnson v. Independent Sch. Dist. 189 Minn. 293, 249 N. W. 177.

■ Cancellation proceedings were brought by appellant under L. 1935, c. 240. Such proceedings are classed as equitable in character. There were also pending at the time of the trial two actions brought by respondents against appellant involving the same facts. One of these was for specific performance and the other for an injunction restraining the appellant from proceeding until the trial of this specific performance action could be had. The trial court at the outset of the trial pointed out the undesirability of a multiplicity of suits and consolidated the actions.

We cannot agree that the court erred in following this procedure. All of these actions presented the same facts and hinged upon the same issues. If appellant was not entitled to a cancellation, it is clear that respondents were entitled to specific performance of the contract, which was one for the sale of real estate. See 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8788. It would indeed be idle to have these actions tried separately. No rights could be or were prejudiced by trying them together, and considerable time and expense were saved all parties. Appellant has been unable to point out any way in which its cause has been impaired by this procedure, and we are likewise unable to do so. Where it can be accomplished without prejudice to any of the litigants and it has the commendable effect of saving trouble and expense, it is certainly to be desired that procedure be simplified by consolidation of actions, and we should be slow to disturb the action of a trial court toward that end where there is no objection with basis in sound common sense. Our laws relating to legal procedure are directed toward simplification and toward elimination of unduly technical procedure, and modern decisions should keep in step. See 2 Mason Minn. St. 1927, § 9277.

The respondents, having done all required of them under the agreement with the appellant, are entitled to specific performance according to the terms of said modified contract.

The other assignments of error have been examined and found to be without merit. Detailed discussion is not necessary.

Affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.