## WISHARD v. BIDDLE ET AL.

1. **Judgment:** ATTORNEY'S LIEN: RELEASE BY ATTORNEY OF LAND FROM JUDGMENT: LIEN DISCHARGED. Where an attorney, after procuring judgments for his client, entered notice of record that he claimed liens for his fees, but afterwards, upon the transfer of certain land by the judgment debtor to another, it was agreed between the attorney and the judgment debtor that the latter should execute bonds for the stay of execution on the judgments, and that the attorney should enter upon the records a discharge of the land from the lien of the judgments, which was done accordingly, *held* that the grantee took the land free from the judgment liens and the liens of the attorney, it appearing from the evidence that the attorney had authority from his client to release the land.

2. **Execution:** STAY OF: BONDS FOR ACCEPTED AND FILED BY AGREEMENT AND NOT AS OF RIGHT: LIEN UPON LAND OF SURETY. But where, in the case above named, the grantee of the land became the surety for the stay of execution, *held* that, under § 3064 of the Code, the stay-bond, when accepted, approved and recorded by the clerk, had the force and effect of a judgment confessed against the property of the surety, and that *by virtue thereof* the judgment became a lien on the land in his hands; and the fact that the debtor was not entitled by law to stay.execution, because the judgments were procured upon causes appealed by him, and because the time for taking such stay had expired, did not change the effect of the bond—it having been offered and accepted as a stay-bond, and the clerk's action in accepting and approving such bonds not being subject to review in a collateral proceeding such as this. See *Maynes v. Brockway*, 55 Iowa, 457.

*Appeal from Polk Circuit Court.*

TUESDAY, OCTOBER 21.

ACTION to quiet the title to eighty acres of land in plaintiff as against certain adverse claims of the defendant. There was judgment for plaintiff, and defendants appeal.

*Finkbine & McClelland*, for appellant.

*Wishard & Read*, for appellee.

REED, J.—The land in question belonged to the university grant. In 1868, one Balenseifer entered into a contract for the purchase of the land with the treasurer of the board of

trustees of the state university.  The price agreed upon was $1,000, and he paid $200 when the contract was entered into, and gave his note for the remainder, payable in ten years, with ten per cent interest, payable annually.  The contract contained a provision that it might be forfeited by the board of trustees at their option for non-payment, when due, of either principal or interest.  In 1873, the contract was assigned to A. M. Post.  He retained it until about the eighteenth of March, 1881, when he transferred it to Thomas B. Sutton.  The $800 note given by Balenseifer remained unpaid at the time of this transfer to Sutton, but he immediately paid said note, and on the nineteenth of March a patent was issued to him by the state.  Plaintiff subsequently purchased the land from a party to whom it had been conveyed by a grantee of Sutton.  In 1877, defendant, Biddle, obtained two judgments against said A. M. Post in the circuit court, in causes which had been appealed to that court from a justice of the peace.  Defendant, Calender, acted as attorney for Biddle in obtaining these judgments, and he entered in the record of the judgments notices that he claimed liens for his services in obtaining them.  At about the time of the transfer of the land contract to Sutton, it was agreed between him and Calender that he would execute bonds for the stay of execution on the judgments, and, in the consideration of his doing this, that Calender would release the land from the lien of the judgments.  In pursuance of this agreement Sutton executed bonds in the ordinary form for the stay of execution on said judgments, which, by the request of Calender, as attorney for Biddle, indorsed thereon, the clerk accepted and approved and recorded, as required by the statute, and Calender entered on the record of the judgments releases of the land from the lien thereof, which he signed as attorney for Biddle.  Plaintiff alleges in his petition that Biddle is claiming a lien on the land by virtue of said judgments, and that Calender is claiming a lien thereon by virtue of his attorney's lien, and the relief demanded is

that his title to the land be quieted against their adverse claims. Defendant, Biddle, denies that Calender had any authority to release the interest of Post in said land from the lien of said judgments, and he claims that, if the lien of the judgments was released, he has a lien on the land under the bonds of Sutton for the stay of execution. Calender's claim is that he had an equitable lien on the land by virtue of his attorney's lien, and that this was not extinguished by the release of the lien of the judgment.

I. The first question to be determined is whether the lien of the judgments on the land was divested by the releases entered in the judgment records by Calender.

**1. JUDGMENT: attorney's lien: release by attorney of lands from judgment: lien discharged.** It is contended by defendant that an attorney has no authority, by virtue of a general employment to prosecute a claim to judgment and enforce collection thereof by the ordinary processes, (except on payment of the claim,) to satisfy or release a lien by which it is secured. This position is probably correct. At all events, its correctness may be conceded for the purposes of this case. We are satisfied by the evidence, however, that Calender had special instructions from Biddle, which authorized him to do what he did do in the premises. The claims against Post were regarded by both Calender and Biddle as doubtful. The debtor was practically insolvent. He had an equitable interest in the land, it is true, but this interest was subject to forfeiture at any time at the option of the university trustees. The $800 note was long past due, and he had no means to pay it. That the lien on his interest in the land was not regarded as of much value, is shown by the fact that, while the judgment had been obtained more than three years before the contract was transferred to Sutton, no steps had been taken to enforce it. Biddle had instructed Calender to do the best he could with the claims, and we have no doubt but that he thought he was doing this when he agreed to release the lien of the judgments, and accept in lieu of it such security as the undertakings of Sutton would afford.

We are very clear, then, that Biddle has no lien or interest in the land under the judgments. And we are equally clear that Calender does not have a lien on the land by virtue of his attornery's lien. His lien undoubtedly gave him interests in the judgments, and perhaps he might enforce it against the property on which the judgments were liens. But, having himself entered the release of the lien of the judgment and made it a matter of record, he cannot now be permitted to assert, as against a subsequent purchaser of the property, a lien or interest by virtue of the judgment.

II. The remaining question is whether a lien was created by the bonds given by Sutton. It will be borne in mind that the patent issued by the state to Sutton was issued the next day after he became surety for the stay of execution. It is provided by section 3064 that, when the surety is accepted by the clerk and the bond is approved and recorded, it has the force and effect of a judgment confessed against the property of the sureties. If, then, the bonds in question have the force and effect of bonds for the stay of execution, it is very clear, we think, that when Sutton became the owner of the land they became liens upon it.

*2. EXECU-TION: stay of: bonds for accepted and filed by agreement and not as of right: lien upon land of surety.*

It is contended by plaintiff, however, that, as the judgments were rendered in the circuit court on appeal, stay of execution thereon could not be taken under the statute, (Code, §. 3061), and for this, and the further reason that the bonds were not given until long after the expiration of the period for the taking of a stay, they cannot be regarded as bonds for the stay of execution, but simply as the undertakings of Sutton to pay the judgments. The answer to this position, however, is, that the instruments were intended by Sutton as bonds for the stay of execution on said judgments, and were accepted and approved and recorded as such by the clerk. And it has been held that the clerk acts judicially in accepting and approving and recording such bonds, and that his action cannot be questioned in a collateral proceeding. *Maynes*

*v. Brockway*, 55 Iowa, 457. This holding is conclusive of the question. The judgment of the circuit court, in so far as it quiets the title to said real estate in plaintiff as against the lien created by said stay bonds, is erroneous.

REVERSED.