## MORSE v. SMYTH et al.

(District Court, E. D. Kentucky. December 21, 1918. On Petition for
Rehearing, January 10, 1919.)

1. MINES AND MINERALS ⬡⟳54(2)—CONVEYANCE—MINERAL RIGHTS.

A deed by a grantor of "all his interest" in a tract of land, excepting
what he had previously sold "by written contract," *held* to convey the
mineral rights in a portion of the tract which he had previously contract-
ed to sell to another, reserving the mineral rights.

2. ESTOPPEL ⬡⟳32(1)—GRANTEE IN DEED—DENIAL OF GRANTOR'S TITLE TO RE-
SERVED MINERAL RIGHTS.

A grantee of the surface of a tract of land by a conveyance reserving
the minerals to the grantor is estopped to deny the grantor's title to the
minerals.

3. EQUITY ⬡⟳83—LACHES—SUIT BY OWNER TO RECOVER PROPERTY.

An owner of property is not chargeable with laches for not asserting
his ownership so long as his rights therein are not invaded.

In Equity. Suit by N. C. Morse, trustee, against Jesse M. Smyth,
Douglas B. Crained, and F. B. Creamer. On motion to dismiss bill.
Denied.

Martin T. Kelly, of Lexington, Ky., and Worthington, Cochran &
Browning, of Maysville, Ky., for plaintiff.

Kelly Kash, of Irvine, Ky., B. R. Jouett and Pendleton & Bush, all
of Winchester, Ky., and J. H. Hazelrigg, of Frankfort, Ky., for de-
fendants.

COCHRAN, District Judge. This cause is before me on defend-
ants' motion to dismiss the bill. Plaintiff characterizes his pleading as
a "petition in equity." No such pleading is known to this court, and
pleadings in this court should be given their proper names.

The questions to be decided by me on this motion have been dimin-
ished in the course of discussion. The parties agree that prior to the
making of the deed by Duckham to Breck of date July 17, 1838, Duck-
ham had sold by title bond to Crawford 1,000 acres in the Carnan
29,000-acre patent, which includes the 400 acres conveyed by Craw-
ford to Smyth, February 15, 1847, which 400 acres includes the 140
acres conveyed to defendant Jesse M. Smyth in the division of his
father's estate, the oil and gas rights in which 140 acres is in dispute
herein, reserving to himself the minerals therein. They further agree
that on July 17, 1838, Duckham conveyed to Breck all his interest in
the Carnan patent, and by this exception in the covenant of special
warranty of those to whom the grantor had previously "sold by writ-
ten contract," Breck had notice of Crawford's previous title bond.
They still further agree that on October 16, 1839, Duckham conveyed
to Crawford the 1,000 acres reserving the minerals. Such is plain-
tiff's claim put forth in briefs filed on his behalf, and defendants ex-
pressly agree to these three facts in the response brief filed on their
behalf. Defendants, however, have it that the reservation of the min-
erals in the Crawford deed is to the grantor Duckham. But it is not
said in the deed that the minerals are so reserved. The statement is
simply that they are reserved without saying to or for whom they
are reserved. If, as claimed by plaintiff, they were covered by the

⬡⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

deed of Duckham to Breck so that Duckham did not own them, the reasonable inference is that they were reserved to Breck, or rather that the meaning of the reservation was that they were excepted out of the conveyance and not intended to be thereby conveyed. If they were so covered, so far as Breck was concerned no reservation or exception need have been made. The only need of making the reservation was on Duckham's account, and that to keep him from warranting them to Crawford.

The parties did well in so agreeing. Such is the reasonable inference from the undisputed facts. The fact that in 1839 Duckham conveyed the surface in the 1,000 acres to Crawford after he had the year before conveyed his entire interest in the Carnan patent has to be accounted for. It is accounted for, if before the making of the deed to Breck he had given Crawford a title bond for the surface in the 1,000 acres. The exception from this special warranty in the deed to Breck indicates that previous to the making of that deed Duckham had given àt least one title bond as to lands in the Carnan patent. The reasonable inference is, therefore, that such title bond was one to Crawford in relation to the 1,000 acres. And the reasonable inference further is that the title bond only covered the surface right in such land, which is all that was covered by the deed. What then are the questions left open for determination on the motion?

[1] 1. Did the minerals pass by the deed of Duckham to Breck? Possibly, though Duckham still had the legal right to the surface right in the 1,000 acres, it did not pass thereby. If it did, nothing was left to pass by the deed of Duckham to Crawford. This would come about by limiting the word "interest" in the deed to Breck to his beneficial interest therein. Thereby his legal title to the surface right in the 1,000 acres would be left to be conveyed by his deed to Crawford.

I understand the defendants to limit their position that the minerals did not pass to Breck to the consideration that the question is controlled by the decision of the Court of Appeals of Kentucky in the case of Kincaid v. McGowan, 88 Ky. 91, 4 S. W. 802, 13 L. R. A. 289. Is such the case? There Duckham in 1843 conveyed to Kincaid and Plummer "all of the twenty-two thousand acres survey of land only deducting therefrom what Duckham had sold and made deeds to prior to that date."

In 1842 Duckham had made two deeds to McGowan for two specific boundaries in the survey, reserving the minerals, one-half the timber, and a mill site in the one, and one-half the minerals and certain of the timber in the other. The question was whether these reservations in these two specific boundaries passed by the deed to Kincaid and Plummer, or whether that deed was limited to that portion of the survey outside of those two boundaries. It was held that it was so limited and that those reservations did not pass.

Judge Bennett said:

"Now it seems to us clear that the deed from Duckham to Kincaid and Plummer did not embrace the separate and distinct mineral and timber interest and mill site that Duckham owned in these two tracts of land, which had been previously separated from the portion of the survey sold to Kincaid and Plummer."

Again he said:

"So it seems that the mineral and timber interest and mill site reserved by Duckham, in these two tracts of land, being a distinct interest from the surface right conveyed, and also being separated from the balance of the 22,000-acre survey by designated boundaries, it would require apt words to convey these separate interests. To illustrate, suppose the mill site reserved had had upon it a fine flouring mill, or there had been a valuable stone quarry (which is a mineral interest) opened on the land, or a fine lead or silver seam on it, worth thousands of dollars, would it be contended that the conveyance of the adjoining portion of the survey—we say adjoining, because the two tracts had become separated from it by metes and bounds—would include these interests? Surely not. The unhesitating answer would be that these were distinct and separate interests, which could only be conveyed by apt words."

The ground upon which it was held that the reservations in the two previous deeds did not pass by the deed in question was because it contained "no apt words" covering them. The deed was in effect no more than a conveyance of that portion of the survey which adjoined the two tracts previously conveyed. We have no such case here. The deed to Breck contained "apt words" which covered the minerals in the 1,000 acres, the surface of which Duckham had theretofore sold by title bond and subsequently conveyed to Crawford. It conveyed "all his" (Duckham's) interest in a tract of land in the county of Estill patented in the name of John Carnan containing twenty-nine thousand acres." The minerals in the 1,000 acres were part of the Carnan patent and then held by Duckham. So far as now appears, they may have been his entire interest therein apart from the legal title to the surface. I can conceive of no more apt words by which the minerals could have been conveyed. If one conveys all his interest in a tract of land, then all his interest therein, whatever its nature, passes thereby. A decision that a deed conveying the portion of a survey adjoining two specific parcels thereof theretofore conveyed does not cover the minerals in those parcels reserved by the grantor in his deeds thereto is not a decision that a deed conveying all his interest in such survey does not cover such minerals. Possibly, if Duckham had theretofore sold the minerals in the 1,000 acres by title bond, the deed to Breck did not cover them on the idea suggested that the interest conveyed was not a mere naked interest but one that was beneficial. But it does not appear that he had so done, and I do not think it is incumbent on plaintiff to make out that he had not so done.

I conclude therefore that the minerals in the 1,000 acres passed by the deed from Duckham to Breck.

[2] 2. Is it essential for plaintiff to allege and prove title in Duckham to the minerals back to the commonwealth?

What we have is a sale and conveyance by Duckham to Crawford of the surface in the 1,000 acres, with a reservation to himself of the minerals therein. Is not Crawford and those claiming under him estopped to deny the title of Duckham and those claiming under him to such minerals? Defendants think that they are not so estopped because they do not claim the minerals under Duckham. But such result does not follow therefrom. What they are claiming is the surface right under a deed from Duckham which reserved the minerals to the

grantor. I have a distinct impression that by reason thereof Crawford and those claiming under him are estopped to deny that those claiming under him Duckham are entitled to the minerals. The plaintiff has given me no assistance on this point. But the impression is so distinct that I feel justified in acting on the idea that the impression is correct, so far as the motion is concerned.

[3] 3. Is plaintiff's claim barred by laches? There is no room for the application of the doctrine of laches in this case. No lapse of time bars one's right to property. It is only in case his right has been invaded that he can be barred of his right thereto. It does not appear from the bill that the invasion of which he complains is other than a very recent one, certainly not long enough to give rise to any claim that he is barred by laches from complaining of such invasion.

These are all the questions which I understand the defendants to raise on this motion. I do not understand that they are now claiming that, if the minerals passed by the deed from Duckham to Breck, they did not pass from Breck to Morse for himself and as trustee by the deed of 1865. There is no room to claim that they did not, for that deed conveyed the grantor's "interest in any reservation of coal, iron, oil or other minerals made by persons who may have heretofore sold and conveyed land" in the Carnan patent.

Possibly the bill is defective in not connecting plaintiff with the grantee in the Breck deed. What he alleges along this line may be no more than a conclusion of law. I do not pass on this question because defendants make no point of it.

The motion to dismiss is overruled.

## On Petition for Rehearing.

This cause is before me on petition for rehearing. I treat the additional brief filed since I handed down the opinion herein as such.

The decisions of Brown v. Darling (Ky.) 52 S. W. 936, and Towns v. Brown (Ky.) 114 S. W. 773, are not against any position I have taken. If I had held that plaintiff takes title to the minerals in dispute by virtue of the reservation in the deed from Duckham to Crawford made in 1839, those cases might be in point. But I have not so held. Plaintiff takes nothing by virtue of such reservation. If there had been no such reservation at all, still plaintiff would have been the owner of the minerals. That is so because of the deed from Duckham to Breck in 1838. By virtue of that deed Breck acquired the minerals. He did not need the reservation to give him the minerals. He already owned them.

This being so, the sole significance of the reservation was to limit Duckham's covenant of warranty in his deed to Crawford. This accounts for Duckham reserving the minerals without saying that he reserved them to himself.

The reservation in the deed to Crawford, however, has evidential value. It shows that the title bond to Crawford given before the deed to Breck covered the surface only. It did not cover the minerals. And this being so, the deed to Breck passed them.

The petition for rehearing is overruled.