HINTON, ET AL., APPELLANTS, v. STAUNTON, ET AL., RESPONDENTS.

No. 8976.

Submitted December 4, 1950. Decided February 14, 1951.

228 Pac. (2d) 461.

Mr. G. J. Jeffries, Roundup, Mr. W. B. Leavitt, Miles City, for appellant Hinton.

Mr. E. K. Cheadle, Helena, Mr. Fred G. Huntington, Billings, for appellant Grass Creek.

Messrs. Shallenberger and Paddock, Missoula, for appellants Scott.

Mr. A. G. McNaught, Roundup, for respondent Musselshell County.

Mr. Ralph J. Anderson, Mr. Albert C. Angstman, Helena, Mr. C. F. Marris, Mr. W. W. Mercer and Mr. W. S. Mather, Roundup, for respondents Staunton, et al.

Messrs. Loble and Loble and Mr. Gene A. Picotte, Helena, amici curiae.

Mr. Jeffries, Mr. Leavitt, Mr. Cheadle, Mr. William F. Shallenberger, Mr. Anderson and Mr. Lester H. Loble argued orally.

MR. JUSTICE FREEBOURN:

This action was commenced on May 22, 1948, to quiet title to the "SW¼ and the W½SE¼ of Section 24, Township 10 North, Range 26 East of Montana Meridian; and Section 20,

and the S½NE¼ of Section 30, Township 10 North, Range 27 East of Montana Meridian'' and the mineral, oil and gas rights thereunder, in Musselshell county, Montana.

From the decree and judgment of the district court plaintiff, Elmer Hinton, has appealed, and defendants, Grass Creek Oil and Gas Company, a corporation, and W. C. Scott and wife, have cross-appealed. The cross-appellants claim mineral, oil and gas rights under certain portions of section 24 of the above described lands.

Plaintiff bases his claim to title on: A contract for deed between himself and John Whelan, now deceased; upon adverse possession; and upon conveyances to him from the Bankers' Farm Mortgage Company, John J. O'Fallon, Catherine Brown Moffet and Della Brown.

The contract for deed is as follows:

''This Agreement, Made and entered into this 29th day of February, A. D. 1944, by and between John Whelan, single, of the County of Musselshell and State of Montana, party of the first part, and Elmer Hinton of the County of Musselshell and State of Montana, party of the second part.

''Witnesseth: That if the said party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the first part hereby covenants and agrees to convey and assure to the said party of the second part, in fee simple, clear of all encumbrances whatever, by a good and sufficient Deed, the lot, piece, or parcel of ground situate in the County of Musselshell and State of Montana, known and described as

''The Southwest Quarter (SW¼) and the West Half of the Southeast Quarter (W½SE¼) of Section Twenty-four (24) in Township Ten (10) North, Range Twenty-six (26) E., M. P. M., all of Section Twenty (20) and the South Half of the Northeast Quarter (S½NE¼) of Section Thirty (30) in Township Ten (10) North, Range Twenty-seven (27) E., M. P. M., excepting and reserving in the party of the first part, all oil and gas rights, together with the right to enter, explore

for, mine and remove such oil and gas. Reserving also the use of such surface as may be necessary for such exploring for, mining and removing such oil and gas.

"And the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of Three Thousand and 00/100 Dollars, payable at Roundup, Montana in the following manner:

"The sum of $100.00 at or before the execution of this contract;

"The sum of $900.00 at or before the 15th day of March, 1944;

"The sum of $1000.00 at or before the 1st day of July, 1944;

"The sum of $1000.00 at or before the 1st day of July 1945; with interest only on $1000 due July 1, 1945, at the rate of four per cent per annum, payable annually, on the whole sum remaining from time to time unpaid, and to pay all taxes, assessments or impositions that may be legally imposed upon said land, subsequent to the year 1943. And in case of the failure of the said party of the second part to make either of the payments, or interest thereon or any part thereof or perform any of the covenants on his part hereby made and entered into then the whole of said payments and interest shall, at the election of said first party become immediately due and payable, and this contract shall, at the option of the party of the first part, be forfeited and determined by giving to the said party, 30 days' notice, in writing of the intention of the first party to cancel and determine this contract, setting forth in said notice the amount due upon said contract, and the time and place, when and where payment can be made by said second party.

"It is mutually understood and agreed by and between the parties to this contract that 30 days is a reasonable and sufficient notice to be given to said second party, in case of failure to perform any of the covenants on his part hereby made and entered into, and shall be sufficient to cancel all obligations hereunto on the part of the said first party and fully re-invest him with all right, title, and interest hereby agreed to be con-

veyed, and the party of the second part shall forfeit all payments made by him on this contract, and his right, title and interest in all buildings, fences or other improvements whatsoever, and such payments and improvements shall be retained by the said party of the first part, in full satisfaction and as a reasonable rental for the property above described and in liquidation of all damages by him sustained, and he shall have the right to re-enter and take possession of the premises aforesaid.

"At payment of $900 due Mar. 15, 1944, second party shall be entitled to assignment from first party of leases or rental arrangements, on approximately 1520 acres of leased land in vicinity. It is understood that action is being taken by first party to quiet title to the lands sold. If decree has not been issued by July 1, 1944, the $1000 payments due then may be deferred without interest until such decree has been issued. In case the second party should fail to make the payments provided and this contract is cancelled, the leases shall revert to the party of the first part, his successors, heirs or assigns.

"It is mutually agreed, by and between the parties hereto, that the time of payment shall be an essential part of this contract; and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

"In testimony whereof, both parties have hereunto set their hands and seals the day and year hereinabove written.

" [Signed, sealed and delivered by John Whelan by mark, in the Presence of Mrs. Joe Vicers, Rev. Joseph A. Freibert.] [Duly Verified.]

    (Signed) John Whelan, his mark (Seal)
    (Signed) Elmer Hinton       (Seal)"

Whelan, a single man, died testate on March 10, 1944. M. D. Staunton was appointed executor of Whelan's will on April 12, 1944.

The contract for deed required the "first party to quiet title to the lands sold." Staunton, as executor, commenced such an

action on April 24, 1947. Decree and judgment, in his favor, was entered August 7, 1947.

Plaintiff was not made a defendant in Staunton's quiet title action since Staunton was not seeking to quiet title to plaintiff's equities in the lands, secured through the contract for deed. Such action was brought so that the deed to be given under the contract for deed would convey good title to plaintiff.

Plaintiff must succeed in this case on the strength of his own title and not on the weakness of Whelan's. Borgeson v. Tubb, 54 Mont. 557, 172 Pac. 326; Smith v. Whitney, 105 Mont. 523, 74 Pac. (2d) 450; Aronow v. Bishop, 107 Mont. 317, 86 Pac. (2d) 644; and McAlpin v. Smith, Mont., 213 Pac. (2d) 602.

The contract for deed speaks for itself. Under it plaintiff could not secure legal title to the surface lands until complete performance of the requirements of the contract for deed.

Plaintiff's possession and occupancy was subordinate to Whelan's title. R. C. M. 1947, sec. 93-2507; Blackfoot Land Development Co. v. Burks, 60 Mont. 544, 199 Pac. 685.

Plaintiff could not establish title by adverse possession. He could not meet the requirements of R. C. M. 1947, section 93-2513, which provides: ''In no case shall adverse possession be considered established under the provision of any section or sections of this code unless it shall be shown that the land has been occupied and claimed for a period of ten years continuously, and the party or persons, their predecessors and grantors, have, during such period, paid all the taxes,· state, county, or municipal, which have been legally levied and assessed upon said land.''

Plaintiff's possession under the contract for deed began as of February 29, 1944. Such possession was had and payment of taxes made with the permission of Whelan, the legal owner of the lands as shown by the contract for deed. Such possession and payment were not hostile to Whelan, and plaintiff never repudiated Whelan's ownership.

The law, as laid down by this court in Kelly v. Grainey, 113

■ Mont. 520, 129 Pac. (2d) 619, 624, is: "While a permissive possession may subsequently become hostile (2 C. J .S., Adverse Possession, sec. 87, page 639), to make it so there must be a repudiation of the permissive possession and of the recognition of ownership implicit therein, and the repudiation must be brought home to the owner by actual notice, or at least by acts of hostility so manifest and notorious that the actual notice must be presumed."

The conveyances to plaintiff from the Bankers' Farm Mortgage Company, John J. O'Fallon, Catherine Brown Moffett and Della Brown conveyed no interest in the lands since the interests, if any, of these parties had been cut off by the Staunton quiet title judgment, prior to the making of such conveyances.

No action was taken to annul, vacate or set aside the Staunton judgment and no appeal was taken therefrom.

Any attack made upon such judgment, in this case, is a ■ collateral attack. Harrison v. Cannon, Mont., 203 Pac. (2d) 978; Sanborn v. Lewis & Clark County, 113 Mont. 1, 120 Pac. (2d) 567; Lander & Co. v. Brown, 110 Mont. 128, 99 Pac. (2d) 217; Frisbee v. Coburn, 101 Mont. 58, 52 Pac. (2d) 882; and Mitchell v. Garfield County, Mont., 208 Pac. (2d) 497.

The attack made herein on the appointment of Staunton, as ■ executor, in the probate proceedings, is also a collateral attack. Such appointment was made by the clerk of the district court, in the absence of the district judge, as provided for in R. C. M. 1947, section 91-4322. It is contended that such appointment resulted in the exercise of a judicial function and was, therefore, null and void.

"* * * an objection that the clerk, in performing a particular function, was usurping judicial powers is not available on collateral attack." 14 C. J. S., Clerks of Court, sec. 35, p. 1243. See also, Maynes v. Brockway, 55 Iowa 457, 8 N. W. 317; Wishard v. Biddle, 64 Iowa 526, 21 N. W. 15.

In Price v. Skylstead, 69 Mont. 453, 222 Pac. 1059, 1060, this court said:

"We think there cannot be any serious controversy over the proposition that the present action is a collateral attack upon the judgment in the foreclosure suit. In Burke v. Inter-State Savings & Loan Ass'n, 25 Mont. 315, 64 Pac. 879 [87 Am. St. Rep. 416], this court said:

" 'By "collateral attack," as the expression is used in this opinion, is meant every proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or by appeal, and except suits brought to obtain decrees declaring judgments to be void *ab initio.*'

"In Jenkins v. Carroll, 42 Mont. 302, 112 Pac. 1064, that definition was amplified somewhat, and the text from 23 Cyc. 1062, was quoted with approval as follows:

" 'If an action or proceeding is brought for the very purpose of impeaching or overturning the judgment, it is a direct attack upon it. * * * On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral.'

"Tested by that rule, the attack here made upon the judgment in the foreclosure action is collateral. No relief is sought against the judgment itself. The purpose of the action is to have the sheriff's certificate and deed canceled of record and thereby remove the cloud from the title to the lands.

"The rule is well settled in this state that, whenever the judgment of a domestic court of general jurisdiction acting within the ordinary scope of that jurisdiction is assailed collaterally, the presumption of jurisdiction over the person of the defendant is conclusive, unless upon the face of the judgment roll a lack of jurisdiction appears affirmatively. Haupt v. Simington, 27 Mont. 480, 71 Pac. 672; Henderson v. Daniels, 62 Mont. 363, 205 Pac. 964."

"A judgment, when collaterally attacked, must be tried by inspection of the judgment roll, and by that alone. These rules rest upon well-established principles." Burke v. Inter-State

Savings & Loan Ass'n, 25 Mont. 315, 64 Pac. 879, 881, 87 Am. St. Rep. 416. See also, State ex rel. Delmoe v. District Court, 100 Mont. 131, 46 Pac. (2d) 39; and Hanrahan v. Andersen, 108 Mont. 218, 90 Pac. (2d) 494.

The decree and judgment show that it was proven "to the satisfaction of the court that the defendants, and each of them, have been duly served with process and summons herein," and the court found "that due and legal service has been made upon all the defendants named in said action."

"This recital in the judgment must on collateral attack be accepted as true, particularly if the judgment roll does not affirmatively show that the recital is false or unwarranted." West v. Capital Trust & Savings Bank, 113 Mont. 130, 124 Pac. (2d) 572, 575.

Defendant, Grass Creek Oil and Gas Company, a Montana corporation, was served with process in the Staunton quiet title action by service had upon the secretary of state under the provisions of R. C. M. 1947, section 93-3008. It asserts the judgment roll shows the affidavit for such service was insufficient. The above statute, in part, provides that in an action against the corporation where "the president or other head, secretary, cashier, or managing agent" cannot be found and an affidavit is filed stating "that none of the persons or officers above named can be found within the state" process may be served upon the secretary of state.

The affidavit in question stated, in part, that affiant had been unable to locate "the President, Vice President, Cashier or other officer of the said defendants * * * Grass Creek Oil and Gas Company, a corporation, * * * upon whom service could be made, and that there is no such agent or officer of said corporation in the State of Montana upon whom service could be had."

The affidavit negatived the idea that any of the officers upon whom service could be made could be found in the state. It was a substantial compliance with the requirements of the statute. That is all that is required. Rothrock v. Bauman,

73 Mont. 401, 236 Pac. 1077; West v. Capital Trust & Savings Bank, supra; and Ervin v. Milne, 17 Mont. 494, 43 Pac. 706.

The certificate of the secretary of state shows copies of summons and complaint were mailed to the Grass Creek Oil and Gas Company at its principal office, Billings, Montana.

The Scotts contend Staunton should have ascertained their address in California from a lawyer who had represented them in a previous quiet title action which had been dismissed. The statutes do not require this. The judgment roll shows the last known address of the Scotts was Philipsburg, Montana. To this address the clerk of the district court mailed, addressed to them, a copy of summons and complaint. They were out of the state, residing in California, and further service was made by publication.

The face of the judgment roll in the Staunton quiet title ██ action does not show a lack of jurisdiction over the Grass Creek Oil and Gas Company or the Scotts.

For the reasons stated the judgment of the lower court is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, BOTTOMLY and ANGSTMAN, concur.

Rehearing denied March 23, 1951.