Theodore B. RUSSELL, Appellant,

v.

The TEXAS COMPANY, a corporation, Frederick T. Manning Drilling Company, a corporation, and The Northern Pacific Railway Company, a corporation, Appellees.

The TEXAS COMPANY, a corporation, Appellant,

v.

Theodore B. RUSSELL, Appellee.

No. 14983.

United States Court of Appeals
Ninth Circuit.

Nov. 24, 1956.

Rehearing Denied Jan. 21, 1957.

Ralph J. Anderson, Stanley P. Sorenson, Helena, Mont., J. R. Vaughn, Los Angeles, Cal., for appellant.

H. J. Coleman, Cale Crowley, Coleman, Jameson & Lamey, Billings, Mont., Walter Will, Denver, Colo., for appellee and cross appellant, The Texas Co.

Cale Crowley, H. J. Coleman, Coleman, Jameson & Lamey, Billings, Mont., M. L. Countryman, Jr., St. Paul, Minn., Robert P. Davidson, Billings, Mont., for appellee, Northern P. Ry. Co.

Before STEPHENS and BONE, Circuit Judges, and HALBERT, District Judge.

HALBERT, District Judge.

Plaintiff-appellant, Russell, claims title to certain real property, which will be referred to in this opinion as section 23. Russell's predecessors in interest acquired their interest in this property from the Northern Pacific Railway Company, defendant-appellee herein, through a contract followed by a warranty deed executed in 1918. In both the contract and the deed was a reservation of mineral rights by the grantor.[1] The Texas Company, defendant-appellee and cross-appellant herein, has been conducting extensive operations on section 23 since 1952 under an oil and gas lease granted by Northern Pacific Railway Company. The Texas Company has also made use of the surface of section 23 in connection with operations carried on by it on lands other than section 23.

Russell, as plaintiff, instituted this action seeking relief under three causes of action. The first cause of action is tantamount to a quiet title action designed to have the mineral reservation by the Northern Pacific Railway in the 1918 deed, and the subsequent oil and gas lease to The Texas Company adjudged void, and at the same time have the alleged clouds, thereby created, removed. By the second and third causes of action, Russell seeks to recover damages from The Texas Company for its use of the surface of section 23 in connection with its operations on section 23 and on adjacent lands.[2]

---

1. The text of the mineral reservation is as follows:
  " * * * excepting and reserving unto the grantor, its successors and assigns, forever, all minerals of any nature whatsoever, including coal, iron, natural gas and oil, upon or in said land, together with the use of such of the surface as may be necessary for exploring for and mining or otherwise extracting and carrying away the same; but the grantor, its successors and assigns, shall pay to the grantee, or to his heirs or assigns, the market value at the time mining operations are commenced of such portion of the surface as may be used for such operations, including any improvements thereon; * * * "

2. The action has, by stipulation, been dismissed as to Frederick T. Manning Drilling Company, originally named as a defendant in the suit.

### First Cause of Action

#### I. Russell's Appeal from the Judgment in Favor of Northern Pacific

Russell's first cause of action is predicated upon the theory that the Acts of Congress granting to the Northern Pacific Railroad Company the lands, of which section 23 is a part, so limited the interest, which the Company acquired, that it was not at liberty to reserve the mineral rights in a subsequent conveyance.

The original granting act of 1864, 13 U. S. Statutes at Large, Ch. 217, p. 365, gave to the Northern Pacific Railroad Company the right to acquire a patent to certain lands in aid of its construction of a line from Lake Superior to the Puget Sound. The 1864 Act, *inter alia*, suspended the Company's power to mortgage the lands granted thereunder. In 1870, Congress passed a Resolution which removed the mortgage restriction and granted additional lands in Oregon and Washington to the Company. This Resolution included a proviso clause which, in essence, required the Company to open up the lands "hereby granted" to settlement and pre-emption at the expiration of five years after the completion of the line if such lands had not, before that time, been mortgaged, sold or otherwise disposed of, 16 U. S. Statutes at Large, Res. 67, p. 378.[3]

It is Russell's contention that the 1864 Act gave to Northern Pacific something less than a fee, in that the power to mortgage was withheld. He reasons that since the 1870 Resolution removed this restriction, there was, in effect, a re-grant of the 1864 lands at the time the Company chose to exercise its newly acquired power to mortgage, so that these lands came within the meaning of the words, "hereby granted," in the proviso clause. Russell then argues that since section 23, in particular, was subject to settlement and pre-emption, it was not susceptible to a mineral reservation by the Northern Pacific.

The District Court, sitting without a jury, found contrary to Russell's contention on this first cause of action and upheld the validity of the mineral reservation and the oil lease. No memorandum was filed in connection with this finding, but the record reveals that Judge Murray, who heard the case, felt that United States v. Northern Pacific Railway Co., 1940, 311 U.S. 317, 61 S.Ct. 264, 85 L.Ed. 210, was determinative of the issue.[4] On this first cause of action the trial court entered judgment in favor of Northern Pacific Railway Company. Russell claims this was error and appeals from that portion of the judgment.

■ It is fundamental that in actions to quiet title or to remove a cloud on title, the plaintiff must succeed on the strength of his own title, and not on the weakness of the defendant's title, Williams v. Baker, 17 Wall. 144, 84 U.S. 144, 21 L. Ed. 561; Moodey v. Dale Consolidated Mines, 9 Cir., 81 F.2d 794, certiorari denied 299 U.S. 549, 57 S.Ct. 11, 81 L.Ed. 404; and Hinton v. Staunton, 124 Mont. 534, 228 P.2d 461.

---

3. To keep the record straight, it should here be noted that Northern Pacific Railway Company, defendant-appellee herein, succeeded to the rights of Northern Pacific Railroad Company by virtue of a mortgage foreclosure and sale in 1903.

4. United States v. Northern Pacific Railway Co., supra, grew out of an action which the government brought against the Northern Pacific Railway Co. to recover damages, *inter alia*, for the wrongful disposition of some of the lands granted it in 1864 and in 1870, claiming that the proviso clause in the Resolution of 1870 applied to all the lands granted in 1864 as well as the additional lands granted in 1870. The Supreme Court in an opinion by Mr. Justice Roberts stated 311 U.S. at page 368, 61 S.Ct. at page 287:

"We hold, contrary to the Government's assertion, that the proviso of the Resolution of 1870, requiring that the lands be opened by the company to settlement and preemption applies only to the additional lands granted by that Resolution and not to lands acquired under the grant of 1864. * * *"

The court then added in a footnote that the legislative history was so convincing that it could reach no other conclusion.

Appellant in the case at bar would have us declare void a mineral reservation which appears expressly in the very deed through which he, himself, claims title. He asserts no independent source of title. On the contrary, he insists that the express recitals in the deed to his predecessor in title (of which he had notice) were ineffective irrespective of the intentions of the parties to the conveyance or the bargain into which they entered. Even if we were to resort to hypothesizing, it would, indeed, be difficult for us to imagine a more obvious case of estoppel.

The appellant would have us remove him from this curious position by applying the rule stated in Oregon & C. R. Co. v. United States, 1915, 238 U.S. 393, 35 S.Ct. 908, 59 L.Ed. 1360, to the facts of the instant case. In that case, the government brought an action against the railroad company to enforce certain covenants which Congress imposed on it by way of proviso in the Acts which granted to the Company the land involved in the controversy. By accepting the grant, the Company covenanted to sell the land at a specified time to actual settlers only, at a stipulated price per acre. The Company sought to defend against the government's action for breach of this covenant on such grounds as waiver, acquiescence, and estoppel. The Supreme Court in an opinion by Mr. Justice McKenna held that such defenses were not available against the government in an action to enforce a clear Congressional mandate.

Can the appellant in the case at bar bring himself within the effect of this Rule? We think not. Even assuming *arguendo* that appellant's theory is sound and that Congress did in 1870 impose a mandatory duty on the Northern Pacific to convey a full fee title to the land here involved, with no reservations, appellant has indicated no authority by which he is enabled to enforce that mandate. Nor has he attempted, if indeed it were possible, to classify himself as a third party

beneficiary or a *cestui que trust* with respect to this land. To overlook a distinction so obvious is to vault the appellant into a status which he has not acquired. In such legal gymnastics we will not indulge.

The law is clear that where the grantee of surface rights or his successors in interest seek to remove the cloud of the grantor's mineral reservation, it must be established that the grantee's rights to the interest reserved flow from an independent source of title, See 31 C. J.S., Estoppel, § 38(f), p. 218. Where, however, the surface owner claims title to the mineral rights, which his grantor expressly reserved to himself, on the theory that his grantor had no right to make such a reservation, the owner of the surface is estopped from asserting that the mineral rights thereby passed to him in the instrument of conveyance, Morse v. Smyth, D.C.1918, 255 F. 981; Wier v. The Texas Co., 5 Cir., 1950, 180 F.2d 465. This doctrine has been enunciated in as many ways as there are individual factual situations to justify its application.[5] Estoppel, in the nature of an equitable concept, is designed to protect the reliances and expectations of innocent persons from detrimental devastation by those who by assent and recognition have induced those reliances and expectations. Whenever the invocation of a rule results in the denial of a remedy, caution implicitly governs discretion. Caution must give way to reasoned judgment, however, where, as in the case at bar, the facts so overwhelmingly justify the application of the doctrine. To disregard its applicability in this case would be to invite a miscarriage of justice.

Even if we felt constrained to recognize the right of Russell to raise the question of the validity of the mineral reservation by virtue of the two granting acts, we are convinced that the holding in United States v. Northern Pacific Railway Co., 1940, 311 U.S. 317, 61 S.Ct. 264,

---

5. Greene v. White, 1941, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626; Ratliffe v. Meyers, 5 Cir., 26 F.2d 79; Dillon Inv. Co. v. Kinikin, 172 Kan. 523, 241 P.2d

493; 16 Am.Jur. Deeds, § 301; 19 Am. Jur. Estoppel, § 26, and 31 C.J.S. Estoppel, § 38(f).

85 L.Ed. 210, is determinative of this issue.

For the reasons given we are of the view that the trial court ruled correctly on this first cause of action.

### Second and Third Causes of Action

The damages which Russell seeks to recover from The Texas Company in his second and third causes of action are based on the following:

*(A) The reasonable value of the use of the surface of section 23 including the use of water, rock and roads thereon in connection with operations on adjacent lands, from September 3, 1952, to October 30, 1952* [The latter is the date on which a revocable license to continue such use was accepted by The Texas Company.].

*(B) The sums alleged to be due under a revocable license commencing on October 30, 1952, which obligated The Texas Company to pay Russell $150.00 a day for the continued use of section 23 in connection with its operations on adjacent lands, a use admittedly in excess of the easement flowing from the mineral reservation in the original deed.*

The evidence shows that The Texas Company received on October 30, 1952, an offer from Russell for a revocable license to cover the use of section 23 in connection with operations on adjacent lands for the sum of $150.00 a day, which offer contained the express proviso that, "your continued use of the roadway, water and/ or materials will constitute your acceptance of this revocable permit." The evidence further shows that The Texas Company did so continue to use section 23 until November 22, 1952, and it was not until sometime in December of that year that Russell finally received a communication from the Company to the effect that the offer was rejected. Neither party depends in any material respect on this purported rejection.

*(C) The reasonable value of the use of the portion of the surface of section 23 which admittedly was required to be paid under the terms of the original mineral reservation.*

Russell argues that this compensation should be measured by the most valuable use to which the surface could be put, which he contends is for the purpose of oil well drilling.

*(D) The value of the water taken from section 23 in connection with operations on section 23, which Russell contends was not included within the terms of the easement for use of the surface.*

In deciding these issues, the trial court found that there was not enough evidence in the record to discern what portion of the water was used by The Texas Company in connection with its operations on adjacent land prior to the date on which the revocable license went into effect, and that the damages for the taking of the rock were so inconsequential that they would be included in the award of compensation for the exercise of the easement. Furthermore, the trial court was of the opinion that the witness who testified with respect to the value of the use of the roads, in connection with operations on the adjacent land during this period, was not qualified to give testimony as an expert witness. The trial court also found that by its continued use, as prescribed by the offer for a revocable license, The Texas Company thereby accepted the offer, and thus became bound to pay $150.00 a day from the date of receipt of the offer to the date of termination of its wrongful activities (October 30 to November 22, 1952).

The trial court determined that the most valuable use to which Russell could devote the land was grazing, and assessed the damages for the use of the land at the rate of $10.00 an acre. The trial court reasoned that since Russell had no title in the surface for the purposes of oil well drilling, he must be limited to a recovery based on the value of the use of the land to which he [Russell] could, with legal propriety, put the land.

The trial court did not decide the issue of whether or not The Texas Company was entitled to the use of surface water in connection with the exercise of its rights of entry and use of section 23 for drilling purposes. It instead found that

the evidence submitted bearing on the valuation of that water was not sufficient to enable the court to arrive at any discernible measure of damages.

Judgment was entered in favor of Russell and against The Texas Company in the amount of $3,837.60, which consisted of $3,600.00 due under the revocable license and $237.60 due for the use of the land under the terms of the mineral reservation.

The Texas Company appeals from that portion of the judgment which awarded Russell $3,600.00 as the amount due under the terms of the revocable license, contending that the court erred as a matter of law in finding that the offer for the said license was accepted.

Russell appeals from that portion of the judgment against The Texas Company which awarded him $237.60, claiming that the court, in arriving at the measure of compensation, applied the wrong rule of damages. Russell further contends on this appeal that the trial court's findings on the evidence were incorrect with respect to the amount of compensation that should have been allowed to him for the water, rock and roads, which were used by The Texas Company in connection with operations on other lands, prior to the date of the revocable license, and also in connection with the water used in carrying on the operations on section 23.

## II. Appeal by the Texas Company from the Judgment in Favor of Russell for $3,600

■ The Texas Company argues that the revocable license, which Russell offered to it in connection with its wrongful use of section 23, was never accepted, because the Company had no intention of accepting it. Appellant presents for our consideration numerous passages from the Restatement of Contracts and Williston on Contracts dealing with the necessity of the offeree's intent to accept where an ambiguous act is selected by the offeror to signify acceptance, or where silence and inaction can be considered an acceptance. None of these citations deal with the precise question that we are confronted with in this case. The question here is whether an offeree may vitiate a contract by a claim of lack of intention to accept an offer when he accepts and retains the benefits offered to him by the offeror, with a positive and affirmative proviso by the offeror that such acceptance of the benefits will, in and of itself, be deemed by the offeror to be an acceptance. To put the problem in homely terms, may an offeree accept all of the benefits of a contract and then declare that he cannot be held liable for the burdens because he secretly had said, "King's Ex"? We think not. A rule with such effect would be unconscionable and is not in line with either fairness or justice. The correct rule, we believe, is found in § 72(2) of the Restatement of Contracts, wherein it is stated:

"Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. *If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept.*" (Emphasis added).

■■ Russell's offer of the license in clear and unambiguous terms stated that the continued use of section 23 in connection with activities and operations on other lands would constitute an acceptance of the offer of the license. The trial court found on the evidence that The Texas Company did so continue to use section 23, and hence unequivocally came within the terms specified for acceptance. It is a well established principle of property law that the right to use the surface of land as an incident of the ownership of mineral rights in the land, does not carry with it the right to use the surface in aid of mining or drilling operations on other lands (See 36 Am.Jur., Mines and Minerals, § 177, § 180 and § 181; anno.: 48 A.L.R. 1406, 1407). That such use by The Texas Company was tortious admits of no

doubt. But even in the absence of a tortious use, the true test would be whether or not the offeror was reasonably led to believe that the act of the offeree was an acceptance, and upon the facts of this case it seems evident that even this test is met.

Appellant urges that the holdings in the California cases of Wright v. County of Sonoma, 156 Cal. 475, 105 P. 409, and Sherman v. Associated Telephone Co., 100 Cal.App.2d 806, 224 P.2d 846, are determinative of this phase of this case. We do not find that either of these cases is in point. In each of these cases the notices sent by the plaintiff to the defendant were to the effect that defendant would be charged at a specified rate per day for his continued wrongful use of the plaintiff's property and contained no words of offer for a license, easement or sale. Hence, the notice was nothing more than an attempt to inflict a penalty by means of liquidated damages, and this the court refused to approve. In the case at bar no such situation existed, since Russell, as the offeror, in clear and unmistakable terms, offered a license to the appellant, and appellant by its own conduct accepted the offer. It is, therefore, obvious that the California cases cited are not applicable.

The conclusion reached by the trial court on this phase of the case was correct.

### III. Appeal by Russell on the Issue of the Value of his Surface Rights

On this issue the trial court refused to consider evidence which was designed to show the value of the use of the surface of the land in question for oil well drilling purposes, and instead based its judgment on a valuation fixed by the most profitable use to which Russell, himself, could have put the land. The trial court found this to be grazing.

Appellant, Russell, attempts to analogize to the general rule in condemnation cases where the proper valuation of land is based on the most profitable use to which the land could be put, whether or not it is so put. But even in condemnation cases, the landowner can only recover for the value of the interest which he *owns*.[6] Since Russell does not own the mineral rights in section 23, it is obvious that he or his privies could not utilize its surface for mineral exploitation. Even if there were authority for Russell's contention in the field of condemnation awards, we are not at all impressed by the analogy. This case before us involves no condemnation. It involves only a use sanctioned by a contract to which Russell is a privy. Compensation for the use and occupancy of land is properly measured by the value that the owner could obtain from what he is able to offer on the market. Russell's predecessor in title never bargained for, and indeed, never received the right to offer section 23 on the market for mineral exploitation, so Russell can have no such right.

A case which seems to us to be very persuasive on this point is Southern Pacific Land Co. v. Meserve, 186 Cal. 157, 198 P. 1055. In that case plaintiff contended that he should be entitled to recover damages for the wrongful use of his desert land by the defendant measured by the rental value of the land with water on it. The facts showed that water in this area could only be obtained through stock ownership in the local water company. The defendant was a stockholder, but the plaintiff was not. The court concluded that the plaintiff's recovery must be limited to the rental value of the land alone, and not measured by the value of the land with an available source of water.

In 15 Am.Jur., Damages, § 131, it is stated:

"If the plaintiff's use of the property is restricted by contract, he can recover only on the basis of the loss of such restricted use."

6. Continental Land Co. v. United States, 9 Cir., 1937, 88 F.2d 104; Washington Water Power Co. v. United States, 9 Cir., 1943, 135 F.2d 541.

The soundness and fairness of this principle are made patent by the rule itself, and to further discuss the point would be but to belabor the obvious.

█ The deed containing the mineral reservation, here involved, shows on its face that payment to compensate the surface owner for the interference with his use of the property would be based on a going market value. The trial court, from ample competent evidence, determined that section 23 was grazing land, and awarded Russell compensation accordingly. The facts so found by the trial court are binding upon us, McCaughn v. Real Estate Land Title & Trust Co., 297 U.S. 606, 56 S.Ct. 604, 80 L.Ed. 879; Inland Power & Light Co. v. Grieger, 9 Cir., 91 F.2d 811, 112 A.L.R. 1075; Ocean Accident & Guarantee Corp. v. Penick & Ford, 8 Cir., 101 F.2d 493; and United States v. Union Trust Co., of Indianapolis, 7 Cir., 90 F.2d 702. This court will not employ a rule of damages which would have the effect of enlarging Russell's right in the property, and as a result we hold that the trial court was correct in limiting Russell's damages to the value of the land for grazing purposes.

IV. Russell's Claim of Error in Awarding Damages for the Water Used by the Texas Company in Connection with Operations on Section 23

█ The trial court considered, but found itself unable to determine from the evidence, the amount of damage, if any, suffered· by Russell as a result of the taking of water from section 23 for use on section 23. After carefully examining the record, we feel constrained to observe that the trial court reached the only conclusion that was logical and rational.

█ Even if the amount of damage was sufficiently presented by the evidence, there is abundant authority for the proposition that the owner of mineral rights is entitled to take from the land and use that amount of water which is reasonably necessary for the exploitation of the mineral rights, Stradley v. Magnolia Petroleum Co., Tex.Civ.App., 155 S.W.2d 649, and cases cited therein. Russell is bound to recognize that this right in the surface is an incident of mineral ownership.

V. Russell's Claim of Error in not Awarding Him Damages for the Wrongful Use of Section 23 Prior to the Effective Date of the Revocable License

█ We have already set forth the trial court's findings on this issue. No duty, in fact no authority, rests with us to review a trial court's decision based on its view of the evidence unless a plain error of fact appears or there is a misapplication of a rule of law, Panama Mail S.S. Co. v. Vargas, 9 Cir., 33 F.2d 894, and The Mabel, 9 Cir., 61 F.2d 537. Where the result is rational and reasonable, the acceptance or rejection of testimony by a trial judge is binding upon this Court, and what is thus done by the trial judge must not be disturbed by us, Metro-Goldwyn-Mayer Corporation v. Fear, 9 Cir., 104 F.2d 892, and Larsen v. Portland California S.S. Co., 9 Cir., 66 F.2d 326. A trial judge, having seen and heard the witness, is in an infinitely better position than we can be to determine what portion, if any, of a witness's testimony is to be believed. Often the conduct of the witness on the witness stand, and the manner in which he testifies, are more important than what the witness actually says, in determining his credibility. It, therefore, follows that we must not in this case substitute our judgment for that of the trial judge unless from the record we find that he was guilty of some manifest error.

We have carefully reviewed the record in this case with our duty, as it is above outlined, in mind. We find that the record does support the trial court's conclusions on this issue. It, therefore, follows that the trial court's disposition of these claims was proper.

The judgment is affirmed as to both appellants.